In the Matter of Alexis RUSU, Debtor.

**AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., Plaintiff,**

v.

**Alexis RUSU, Defendant.**

Bankruptcy No. 94–12016–WHD.
Adv. No. 94–1092N.

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

Oct. 27, 1995.

D. Ruth Primm, Atlanta, Georgia, Deborah S. Masinos, Becket & Watkins, Malvern, Pennsylvania, for Plaintiff.

Richard H. Thomson, Clark & Washington, P.C., Atlanta, Georgia, for Defendant.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Currently before the Court in these proceedings is the Motion for Summary Judgment of American Express Travel Related Services Co., Inc. (hereinafter "AmEx"). AmEx's motion comes as part of a Complaint to Determine Dischargeability of Debt, brought by it against Alexis Rusu (hereinafter "the Debtor"). Consequently, these matters fall within the subject matter jurisdiction of the Court, see 28 U.S.C. § 157(b)(2)(I), and they will be disposed of as provided in the Findings of Fact and Conclusions of Law which follow.

### FINDINGS OF FACT

The instant controversy hinges upon the pre-bankruptcy activity in two AmEx accounts held by the Debtor. The first of those accounts, opened by the Debtor in February of 1989 and bearing the number 3728–653327–01008 (hereinafter "Account One"), involved a standard American Express payment schedule. In March of 1989, the Debtor supplemented this line of credit by opening the second account in issue, an AmEx revolving credit card known by the number 3737–031190–92003 (hereinafter "Account Two").

Between June 18, 1994, and July 14, 1994, the Debtor used his AmEx Account One to finance 18 transactions, wherein he purchased a variety of electronics, appliances, liquor, hardware, and building supplies. These purchases totalled approximately $2,142.53 and, pursuant to the account's payment terms, that balance became due in full some 30 days later. Notwithstanding this fact, however, the Debtor never made any payment upon the debt in question.

Between June 3, 1994, and July 23, 1994, the Debtor also made heavy use of his AmEx Account Two. Specifically, the Debtor purchased audio/visual equipment, furniture, electronics, appliances, toys and feed/supplies through 19 transactions which totalled $4,662.24. Although the contract for Account Two mandated certain minimum monthly payments, the Debtor likewise never paid any amount toward this debt.

On September 19, 1994, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code and, shortly thereafter, AmEx filed its Complaint to Determine Dischargeability. To support this Complaint, AmEx alleged that the Debtor incurred each of the above-mentioned charges through conduct constituting false pretense, false representation, or actual fraud, as proscribed by 11 U.S.C. § 523(a)(2)(A). By means of an answer to AmEx's complaint, the Debtor denied the applicability of section 523(a)(2)(A)'s discharge exception and filed a counterclaim for damages pursuant to 11 U.S.C. § 523(d).

On or about March 24, 1995, AmEx served the Debtor with interrogatories which included a request for the following admissions:

(1) You made or authorized another to make each purchase, you received or authorized another to receive each cash advance, you signed or negotiated each check, and/or you used or authorized another to use your Personal Identification Number to make each cash withdrawal or credit transaction on an automated teller machine,

\*      \*      \*      \*      \*      \*

(2) At the time you incurred all or a significant portion of the charges to your credit accounts ... you did not have the ability to pay the required payment or the balance under the terms of the account contracts.

(3) At the time you incurred all or a significant portion of the charges to your credit accounts ... you did not intend to repay the charges.

\*      \*      \*      \*      \*      \*

*Plaintiff's First Request for Admission Under Fed.R.Bankr.P. 7036 and Rule 36 F.R.Civ.P.,* at 6 (hereinafter "the Request"). The Debtor failed to make a timely response to these requested admissions and, on April 24, 1995, AmEx filed a Motion to Extend Discovery so as to offer the Debtor additional response time. Although the Court granted AmEx's request, thereby extending discovery until June 26, 1995, the Debtor again failed to take advantage of this additional opportunity to respond.

In light of these events, AmEx now has presented the Court with a Motion for Summary Judgment, arguing that the Debtor's repeated inaction has given rise to an admission of those allegations contained within its Request for Admissions. As such, reasons AmEx, no material question of fact exists, and it should therefore be the recipient of a judgment of nondischargeability, as well as an award of attorney's fees.

## CONCLUSIONS OF LAW

In accordance with Federal Rule of Civil Procedure 56 (applicable to bankruptcy under Fed.R.Bankr.P. 7056), this Court will grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party has the burden of establishing the right of summary judgment, *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.,* 692 F.2d 1370, 1372 (11th Cir.1982), and the Court will read

the opposing party's pleadings liberally. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.,* 766 F.2d 482, 484 (11th Cir.1985). The moving party must identify those evidentiary materials listed in Rule 56(c) that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(e). Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, the party opposing the motion must go beyond the pleadings and demonstrate that there is a material issue of fact which precludes summary judgment. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Martin v. Commercial Union Ins. ·Co.,* 935 F.2d 235, 238 (11th Cir.1991).

## I. *The Standard Behind Section 523(a)(2)(A).*

The bankruptcy process serves, through its discharge provisions, as a means by which individuals may release themselves from the albatross of overburdensome debt. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (citations omitted). At the same time, however, a separate equitable policy mandates that any such mechanism for an unencumbered fresh start only should redound to the benefit of those debtors who are unfortunate, yet honest. *Id.* at 286–87, 111 S.Ct. at 659. Thus, as an exception to its baseline of discharge provisions, the Bankruptcy Code provides:

(a) A discharge under section 722, 1141, 1228(a), 1228(b), or 1328(b) of this title

does not discharge an individual debtor of any debt—

\* \* \* \* \* \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud

\* \* \* \* \* \*

11 U.S.C. § 523(a)(2)(A). Consequently, through section 523(a)(2)(A), the Code offers a means of denying those individuals who do not qualify as "honest but unfortunate debtors" the benefits of a fresh start. *Grogan,* 498 U.S. at 287, 111 S.Ct. at 659. Like other exceptions to discharge, however, the provisions of section 523(a)(2)(A) warrant narrow construction. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1579 (11th Cir.1986).

In practice, the creditor bears the burden of establishing nondischargeability under section 523(a)(2)(A). *Hunter,* 780 F.2d at 1579. Specifically, the creditor must establish by a preponderance of the evidence that:

(1) the debtor made a false representation with the purpose and intention of deceiving the creditor;

(2) the creditor relied upon the debtor's representation;

(3) such reliance by the creditor was justified; [1]

(4) the creditor suffered a loss as a result of that reliance.

*Moore v. Gill (In re Gill),* 181 B.R. 666, 673 (Bankr.N.D.Ga.1995). Given the difficulty of this burden, however, courts frequently will presume that the creditor in fact relied upon the Debtor's representations. *See Mfr's. Hanover Trust Co. v. Ward (In re Ward),* 857 F.2d 1082, 1087 (6th Cir.1988) (Merritt,

---

1. The Court acknowledges that, as a matter of tradition, many circuits have held creditors to a standard of "reasonable reliance." *See Grogan,* 498 U.S. at 285–90, 111 S.Ct. at 658–61; *see also Hunter,* 780 F.2d at 1579; *Signet Bank v. Keyes,* 959 F.2d 245 (10th Cir.1992); *Mfr. Hanover Trust Co. v. Ward (In re Ward),* 857 F.2d 1082, 1082 (6th Cir.1988). Indeed, this Circuit previously has employed such a "reasonableness"

standard. *See Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1579 (11th Cir.1986). After re-evaluating this requirement, however, the Eleventh Circuit recently modified its criteria for section 523(a)(2)(A), supplanting the "reasonableness" prong with a somewhat looser requirement of "justifiable reliance." *See City Bank & Trust Co. v. Vann (In re Vann),* 67 F.3d 277, 280–84 (11th Cir.1995).

J., dissenting) (citations omitted); *Mfr's. Hanover Trust Co. v. Turner (In re Turner)*, 23 B.R. 681, 684 (Bankr.D.Mass.1982).

■ An additional set of analytical standards works to fit the principle of section 523(a)(2)(A) within the unique circumstance of the credit card transaction. Specifically, a debtor uses his credit card under "false pretense" or "false representation" when he continues to incur charges, notwithstanding communication of the card's revocation. *See First Natl. Bank of Mobile v. Roddenberry*, 701 F.2d 927, 932–33 (11th Cir.1983). Similarly, an act of "actual fraud" takes place when a debtor misrepresents his intention to pay the debt in question. *Chase Manhattan Bank, N.A. v. Ford (In re Ford)*, 186 B.R. 312, 320 (Bankr.N.D.Ga.1995) (Drake, B.J.). As indicia of such misrepresented intent, courts look at:

(1) the length of time between the charges made and the bankruptcy;

(2) whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges are made;

(3) the number of charges made;

(4) the amount of the charges;

(5) the financial condition of the debtor at the time the charges are made;

(6) [whether] the debtor [made] multiple charges on the same day;

(7) whether or not the debtor was employed;

(8) the debtor's prospects for employment;

(9) whether there was a sudden change in the debtor's buying habits; and

(10) whether the purchases were made for luxuries or necessities.

*Ford*, 186 B.R. at 320 (citing *Chase Manhattan Bank, N.A. v. Carpenter*, 53 B.R. 724, 730 (Bankr.N.D.Ga.1985)).

## II. *The Debtor's Inaction as an Admission of Section 523(a)(2)(A)'s Applicability.*

■ Turning to the facts of this case, the Court notes that AmEx has presented the Debtor with a request to admit his involvement in the charges, his inability to pay those charges, and his lack of any intent to pay them. Despite ample opportunity to do

so, the Debtor has failed either to admit or to deny those assertions. Thus, the issue before the Court becomes the import of that inaction and its consequence upon the instant summary judgment motion.

Providing for such admission requests, Federal Rule of Civil Procedure 36 states:

\*     \*     \*     \*     \*     \*

Each matter of which an admission is requested shall be separately set forth. *The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter,* signed by the party or by the party's attorney, but, unless the court shortens the time, a defendant shall not be required to serve answers or objections before the expiration of 45 days after service of the summons and complaint upon that defendant. If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder.

\*     \*     \*     \*     \*     \*

Fed.R.Civ.P. 36(a) (applicable in bankruptcy pursuant to FED.R.BANKR.P. 7036) (emphasis added). Thus, "Rule 36(a) of the Federal Rules of Civil Procedure clearly provides that a party must answer each matter for which an admission is requested within 30 days or the matter is deemed admitted." *United States v. Kasuboski*, 834 F.2d 1345, 1347 (7th Cir.1987); *accord Smith v. First Natl. Bank of Atl.*, 837 F.2d 1575, 1577 (11th Cir.1988).

■ As a consequence of the Debtor's inaction, it therefore stands settled as a matter of law that the Debtor or his agent incurred these charges at a time when the

Debtor had no ability to pay them. Furthermore, and most importantly, it stands resolved that the Debtor had no intention to pay the charge debts when he made them. As previously noted, a Debtor commits "actual fraud" when he has "set out to incur charges which he had no intention of paying and then proceed[s] to deceive his creditor to the contrary." *Ford*, 186 B.R. at 321. In light of the Debtor's admissions by default, as well as the undisputed facts of this case,[2] the Court consequently finds it clear that the Debtor incurred the charges in question through an act of "actual fraud."

### III. AmEx's Entitlement to Attorney's Fees.

■ In addition to the principal and interest accrued upon the charges in issue, AmEx also seeks recovery of attorney's fees, as provided in the contracts to Account One and Account Two.[3] On the recoverability of such expenses, the Eleventh Circuit has reasoned:

> The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(11). "Claim" is defined as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(4)(A). "It is established that 'debt' is to be given a broad and expansive reading for purposes of the Bankruptcy Code." *In re Chase & Sanborn Corp. (Nordberg v. Arab Banking Corp.)*, 904 F.2d 588, 595 (11th Cir.1990). Therefore, the "debt" excused from discharge in a successful Section 523 action

would appear to include a debtor's contractual obligation to pay a creditor's attorney's fees.

*TranSouth Fin. Corp. of Florida v. Johnson*, 931 F.2d 1505, 1507 (11th Cir.1991). Having deemed AmEx a prevailing party in this matter[4], the Court therefore finds it appropriate to grant attorney's fees, totalling $2,662.72, in that creditor's favor. *See id.* at 1507–08.

### CONCLUSION

Due to a series of admissions by default on the part of the Debtor, the Court finds no material question of fact to remain regarding the applicability of 11 U.S.C. § 523(a)(2)(A) to this controversy. It, therefore, is **ORDERED** that the Motion for Summary Judgment on these matters by American Express Travel Related Services Co., Inc. is **GRANTED**. Furthermore, to the extent that an act of "actual fraud" has made the Debtor's $17,751.48 obligation nondischargeable in bankruptcy, the Court finds it proper to grant the prevailing creditor $2,662.72 in attorney's fees, as provided in its contracts with the Debtor.

**IT IS SO ORDERED.**

### JUDGMENT

Judgment is hereby entered for the Plaintiff against the Defendant in the above-styled adversary proceeding in accordance with the Order of the Court entered the 27 day of October, 1995.

---

2. Aside from the Debtor's admissions by default, the Court notes that a variety of facts present indicia of a misrepresented intent. For instance, a review of the Debtor's purchases reveals a patterns of "loading up" through a rapid fire of purchase activity on the eve of filing. *See Ford*, 186 B.R. at 320 (citing *Carpenter*, 53 B.R. at 730). Moreover, the Court observes that a high percentage of the charges went to luxury expenses such as electronic equipment, liquor purchases, and visits to local adult entertainment clubs. *See id.; see also Exhibit A, Complaint to Determine Dischargeability*.

3. Pursuant to the terms of the Account One contract, the parties agreed that up to 15% shall be

recoverable as attorney's fees related to debt collection. Similarly, the Account Two contract provided for the payment of "reasonable attorney's fees" by the Debtor.

4. To the extent that AmEx has presented the Court with a clearly valid nondischargeability contest, the Court also rejects, as a matter of law, the counterclaim for damages presented by the Debtor. *See* 11 U.S.C. § 523(d) ("the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds the position of the creditor was not substantially justified.").