**Charlotte S. PROVENZA,**

v.

**GULF SOUTH ADMINISTRATIVE SERVICES, INC., et al.**

**No. Civ.A. 94–417–B.**

United States District Court, M.D. Louisiana.

Oct. 6, 1999.

Scott D. Wilson, Baton Rouge, LA, for Charlotte S. Provenza, plaintiff.

Dwayne O. Littauer, Kullman, Inman, Bee, Downing & Banta, New Orleans, LA, Charles H. Hollis, Kullman, Inman, Bee, Downing & Banta, New Orleans, LA, for Womans Hospital Foundation.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

POLOZOLA, Chief Judge.

This matter is before the Court on cross-motions for summary judgment[1] filed by Charlotte S. Provenza ("plaintiff") and defendant Woman's Hospital Foundation ("Woman's Hospital").[2] For reasons which follow, the plaintiff's motion for summary judgment shall be granted and defendant's motion for summary judgment is denied.

### FACTS AND PROCEDURAL HISTORY

Plaintiff seeks to recover medical expenses insured in the treatment of her son, Paul Benton Provenza. It is necessary to set forth some background information to fully understand the legal and factual issues involved in this case. The plaintiff filed this suit to receive benefits allegedly due from a group health plan issued by her employer. The plan denied benefits. The parties have exhausted all remedies under the plan. The Court now has jurisdiction over the claim.

Some time prior to September of 1992, ventilation tubes were placed in Paul Benton Provenza's[3] ears due to chronic secretory otitis. On or about September 15, 1992, Dr. Stanley Peters, Jr. ("Dr.Peters") diagnosed Ben as having chronic serous otitis media, which Dr. Peters treated with medication. During a follow-up visit on October 16, 1992, Dr. Peters found Ben to be essentially "problem-free." There was no evidence of serous otitis or of any hearing impairment during this October visit, and Ben was found to be ."free of any active problem."

Coverage for the Provenzas under the group health plan ("the plan") sponsored by Woman's Hospital began on January 1, 1993. On March 8, 1993, Dr. Mark J. Waggenspack examined Ben and treated him for acute serous otitis media. Dr. Peters examined Ben on June 21, 1993 and thereafter placed a second set of ventilation tubes in Ben's ears. In early August of 1993, Ben was diagnosed with left otitis media and was placed on antibiotics. When his condition did not improve, Ben's medication was modified on or about August 19, 1993. On August 21, 1993, Ben again went to the Doctor because of with increased pain in his ear. Ben's condition continued to worsen, and he was hospitalized by Dr. Patricia Peairs on August 22, 1993. Dr. Peairs' diagnosis upon admission was left otitis media, left otitis externa, mastoiditis, and cellulitis. Ben's hospitalization continued through August 27, 1993.

Plaintiff filed a claim for benefits relative to Ben's medical treatments in March, June, and August of 1993. The Adminis-

---

1. Doc. No. 51, 74.

2. Plaintiff originally filed suit against Woman's Hospital and Gulf South Administrative Services, Inc. Per Ruling issued December 13, 1994, the claims against Gulf South were dismissed with prejudice, and plaintiff was granted time to amend the complaint to name the proper defendant. (Doc. No. 22).

3. Paul Benton Provenza, who is Ms. Provenza's son, will hereinafter be referred to as "Ben."

trator of the plan denied the claim on the grounds that the condition for which Ben was treated was a pre-existing condition which was diagnosed or treated within three months prior to commencement of coverage.

Oral argument was held on cross-motions for summary judgment in April of 1998. The Court ordered that the case be administratively closed and the Court, without objection, remanded the matter to the Plan Administrator ("Administrator") to allow him to determine additional facts. Specifically, the Administrator was to determine which ears were infected on the relevant dates. The Administrator again denied plaintiff any benefits upon reconsideration. The Administrator also found that Ben's preexisting chronic serous otitis related to *both* ears, thereby limiting coverage as to either ear. The case was reopened on September 28, 1998. The parties were given until October 16, 1998 to file supplemental memos, but failed to do so.

## CROSS–MOTIONS FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4]

The well-established criteria that there must be no *genuine* issue of *material* fact

before summary judgment will issue insures that a properly supported motion will not be defeated simply by the "existence of *some* alleged factual dispute."[5] With respect to "materiality," because the underlying substantive law is referenced to determine what facts are material,[6] only factual disputes that might affect the action's outcome under governing law can properly preclude summary judgment; disputes over facts which have no effect on the action's resolution are irrelevant.[7] However, even if material, a factual dispute will not prevent summary judgment if the dispute is not "genuine." In examining the record, the Court will view the evidence and draw all reasonable inferences therefrom in favor of the party not bearing the burden of proof at trial.[8]

In this situation, where there are cross-motions for summary judgment, the party bearing the burden of proof at trial must not only satisfy the initial burden of production on the summary judgment motion by demonstrating that there is no genuine dispute as to any material fact, but also the ultimate burden of persuasion on the claim itself by showing that it would be entitled to a judgment as a matter of law at trial.[9] However, the Court need not determine whether that party has carried its ultimate burden of persuasion until after the initial burden of production has been fulfilled. Upon such a showing by the party bearing the burden of proof, the party not bearing the burden of proof at trial is required to come forward with evidence which demonstrates the existence of a genuine issue for trial. When all the evidence presented by both parties "could

---

**4.** Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Cormier v. Pennzoil Exploration & Prod. Co.,* 969 F.2d 1559, 1560 (5th Cir.1992).

**5.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

**6.** *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

**7.** *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

**8.** *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Newport Ltd. v. Sears, Roebuck & Co.,* 6 F.3d 1058, 1064 (5th Cir.1993).

**9.** Fed.R.Civ.P. 56(c). *See also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

not lead a rational trier of fact to find for the [party not bearing the burden of proof at trial], there is no 'genuine issue for trial'" and summary judgment is proper.[10]

## LAW AND ANALYSIS

■ In *Pierre v. Connecticut General Life Ins. Co.*,[11] the Fifth Circuit set forth the procedures to be followed by district courts in making a judicial review of a denial of benefits claim under ERISA.[12] The *Pierre* court concluded that de novo review is proper for plan term interpretations where the plan itself does not grant the trustee discretion to interpret plan terms.[13] In doing so, the Pierre court relied on the United States Supreme Court holding in *Firestone Tire & Rubber v. Bruch.*[14] The Fifth Circuit, however, limited the de novo standard of review to the interpretation of plan terms.[15] The *Pierre* court found that de novo review was not proper for factual determinations.[16] Instead, the Fifth Circuit held that "an abuse of discretion standard best balances the need to respect the plan administrator's factual determinations and the need to protect beneficiaries by providing some judicial review of those decisions."[17] Thus, the Court will first apply an abuse of discretion standard to its review of the plan administrator's determinations of the facts underlying the claim. In applying the abuse or discretion standard, the court must determine whether the plan Administrator acted "arbitrarily or capriciously."[18] Then, the Court will apply a de novo standard of review to the Administrator's determination of whether those facts constitute a claim under the terms of the plan. The Court now turns to a review of the plan and the discretion, if any, afforded to the Administrator.

■ A review of the record reveals that pending remand to and reconsideration by the Administrator, the plan was amended to allow the Administrator discretionary authority to determine eligibility or construe terms of the plan. Defendant now argues that the appropriate standard for review of the Administrator's application of facts to the terms of the plan has changed from de novo to abuse of discretion. Plaintiff contends that this change of plan terms subsequent to the initial denial of benefits should not be applied in this case. The Court finds that the plan amendment which became effective after the bills were incurred, after benefits were initially denied by the Administrator, and after this suit was filed should not be applied retroactively. Obviously the Administrators of the plan have a right to amend their plan to increase or decrease benefits, to change the powers of the plan

10. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1560 (5th Cir.1992).

11. 932 F.2d 1552 (5th Cir.1991), cert. denied, 502 U.S. 973, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991).

12. *See also Harms v. Cavenham Forest Industries, Inc.*, 984 F.2d 686, 688–89 (5th Cir. 1993) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989)), cert. denied, 510 U.S. 944, 114 S.Ct. 382, 126 L.Ed.2d 331 (1993).

13. *Pierre*, 932 F.2d at 1555–56.

14. 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

15. *Pierre*, 932 F.2d at 1556.

16. *Pierre*, 932 F.2d at 1558–62.

17. *Pierre*, 932 F.2d at 1562.

18. The Court is cognizant of the holding in *Meditrust Financial Services Corp. v. The Sterling Chemicals, Inc.*, 168 F.3d 211 (5th Cir. 1999). The Fifth Circuit noted that although the court in *Pierre* refused to equate the "abuse of discretion" and "arbitrary and capricious" standards, the *Wildbur* court was correct in finding that "there is only a 'semantic, not a substantive, difference' between the arbitrary and capricious and the abuse of discretion standards in the ERISA benefits review context" 168 F.3d at 214, citing *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 635 (5th Cir.1992) (emphasis provided).

Administrator, and to change other provisions of the plan. However, the Court does not believe the provisions of the plan can be changed to limit or deny benefits due policy holders on pending claims. Therefore, the Court will apply the provisions of the plan at the time the claim for benefits was filed. De novo review is the appropriate standard for review of the Administrator's application of facts to the terms of the plan.

The terms "pre-existing condition" and "illness" as defined under the plan are crucial to the disposition of this case. These terms are defined as follows:

> **Pre-existing condition:** A pre-existing condition is an *injury or illness* that was *diagnosed or treated within three (3) months before the covered person's coverage began.* Benefits will not be payable for treatment of a pre-existing condition until the earliest of the following:
>
> (1) Twelve (12) consecutive months after coverage under the plan begins; or
>
> (2) Three (3) consecutive months after coverage under the plan begins during which no expenses are incurred for the pre-existing condition.
>
> \*\*\*\*
>
> **Illness:** *sickness or disease* which causes loss covered by the plan. Such loss must commence while the Covered Person whose illness is the basis of the claim is covered under the Plan.[19]

In *Walker v. Wal–Mart Stores, Inc.,* the Fifth Circuit stated that "Congress expressly intended for ERISA plans to be 'written in a manner calculated to be understood by the average plan participant,' and need only be 'sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.'"[20] Courts must interpret ERISA plans' provisions "as they are likely to be 'understood by the average plan participant,' consistent with ERISA's statutory drafting requirements."[21]

Coverage for plaintiff began on January 1, 1993. Thus, the three month pre-existing exclusionary period spanned from October 1, 1992 through December 31, 1992. In September of 1992, Dr. Peters saw Ben and diagnosed otitis media in both ears. Dr. Peters also found that the ventilation tubes which had been placed in Ben's ears at an earlier date were plugged and no longer functioning. Ben's condition was treated with medication. During a follow-up visit on October 16, 1992, Dr. Peters noted that Ben "was free of any active problem." An audiometric evaluation showed that Ben's hearing was normal and that his ears were free from fluid. Dr. Peters gave Ben "a clean bill of health" and determined that no treatment was necessary.

Defendant admits that the October visit was solely for purposes of follow-up, but argues that the visit was "very much caused by and related to [Ben's] ongoing ear problems." Defendant also argues that a diagnosis was rendered during this visit, relying upon the "diagnosis code" utilized for billing purposes. The visit was coded and described as follows: "381.10—serous otitis mediachronic; office visit to Dr. Peters for re-check of ears." Technically speaking, a diagnosis code was utilized for the October visit, but Dr. Peters explained in his letter of August 31, 1993 that no diagnosis or treatment was rendered during the October visit. Instead, the visit was simply a follow-up/re-check to ensure that Ben's ears were functioning normally and that no infection was present. The Court believes it should give great weight to Dr. Peters' unrebutted letter of August 31, 1993 which describes

---

**19.** Doc. No. 53, Exhibit 2 (emphasis provided).

**20.** *Walker v. Wal–Mart Stores, Inc.,* 159 F.3d 938, 940 (5th Cir.1998).

**21.** *Walker,* 159 F.3d at 940.

the nature of the visit and what he actually did.

Part of the underlying rationale for the Administrator's initial denial of benefits was that ventilation tubes were placed in Ben's ears in September of 1992, and that one purpose of the October 16, 1992 visit was to re-check the tubes.[22] This factual finding is incorrect and not supported by the evidence in this case. It is not clear from the evidence in the record precisely when Dr. Peters placed the ventilation tubes in Ben's ears; however, it is clear that the tubes were surgically placed some time *prior to* the September, 1992 visit. Dr. Peters explained in subsequent correspondence that "Ben has been a patient in my practice for several years and has had ventilation tubes placed *in the past* for chronic secretory otitis. He was seen by me in September of 1992, at which time his tubes were found to be non-functioning and he did indeed have otitis media with an effusion at that time."[23] It was during this September, 1992 visit that Ben's acute otitis media was diagnosed and treatment prescribed. The Administrator's reliance upon the factual finding that tubes were placed in Ben's ear in September of 1992, thereby necessitating a check in October, was an abuse of discretion on the part of the Administrator.[24] The remaining factual findings of the Administrator are not at issue.

■ The Court next turns to the application of the facts to the terms of the plan. Applying the de novo standard of review, this Court finds that the Administrator was incorrect in finding that Dr. Peters treated Ben for chronic serous otitis on October 16, 1992. This Court does not dispute the defendant's assertion that a chronic condition which is not acute can qualify as an "illness" under the plan. However, under the clear terms of the plan, the illness must be *diagnosed* or *treated* during the three-month exclusionary period. On October 16, 1992, Ben was neither treated nor diagnosed for an illness, as that term is defined under the plan. It is clear from the evidence in the record that Dr. Peters found no evidence of serous otitis at the time, rendered no treatment, determined there was no hearing impairment, and deemed Ben "problem-free." Therefore, the medical expenses associated with the treatment rendered to Ben during March, June, and August of 1993, including the hospitalization, should not have been precluded from coverage under the plan.[25]

The Court notes that Ms. Provenza was compliant in having Ben re-examined by Dr. Peters on October 16, 1992 to be sure that the treatment directed by Dr. Peters in September had successfully eradicated the serous otitis with effusion. Had Ms. Provenza chosen to forego the October return visit due to the fact that Ben was feeling better and was no longer complaining of ear discomfort, and assuming that Ben had no additional ear problems during the three month period prior to January 1, 1993, the Administrator could *not* have denied coverage of the 1993 medical expenses on the basis of the three-month exclusionary period related to preexisting conditions. Such a scenario leads to absurd results since Ms. Provenza would be effectively penalized for acting conscientiously and responsibly. The record is

---

22. Defendant's Statement of Undisputed Material Facts. (Doc. No. 52).

23. Doc. No. 53, Exhibit A.

24. In applying the abuse of discretion standard, the court determines whether the plan administrator acted arbitrarily and capriciously. An arbitrary decision is one made without a rational connection between the found facts and the evidence. See *Bellaire*

*General Hospital v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 828–29 (5th Cir.1996).

25. The finding that Ben was treated in May, June, and August of 1993 is based upon the evidence of record. This finding does not preclude the possibility that Ben may have received additional medical treatment during 1993, documentation of which has not been presented to the Court.

clear. There was no treatment or diagnosis rendered during October, November or December of 1992. Therefore, expenses incurred after January 1, 1993 for treatment of medical problems rendered to Ben related to his ears should be covered under the plan.

For the reasons set forth herein,

IT IS ORDERED that the motion for summary judgment of defendant Woman's Hospital Foundation, Inc. be denied.

IT IS FURTHER ORDERED that the motion for summary judgment of plaintiff Charlotte S. Provenza be granted.

IT IS FURTHER ORDERED that judgment be rendered in favor of the plaintiff and against the defendants in accordance with this opinion. The parties shall submit a proposed judgment to the Court within 15 days which shall be approved as to form by all parties.