In re Nancy MAYERSON, Debtor.

Colonial Pacific Leasing, Plaintiff,

v.

Nancy Mayerson, Defendant.

Bankruptcy No. 99–3177.
Related No.–99–31883.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Aug. 9, 2000.

**408**

Kristine H. Reed, Waynesfield, OH, for
Plaintiff.

Robert Balyeat, Lima, OH, for Debtor/Defendant.

## DECISION AND ORDER

RICHARD L. SPEER, Chief Judge.

The instant case comes before the Court upon the Parties' Cross Motions for Summary Judgment, and Responses thereto. In support thereof, each Party has submitted to the Court a detailed Memorandum which, after setting forth the specific facts of this case, outlined the Parties' respective legal positions. The Court has now had the opportunity to review the legal positions taken by the Parties as well as the legal arguments in support thereof. Based upon that review, and for the following reasons, the Court finds that each Parties' Motion for Summary Judgment should be denied, and that this case should proceed to Trial.

█ In the above captioned adversary case, the Plaintiff, Colonial Pacific Leasing, seeks to have a debt owed to it by the Defendant, Nancy Mayerson, in the amount of Fifty Thousand Nine Hundred Eighty-two and 50/100 dollars ($50,982.50) held nondischargeable. The statutory basis upon which the Plaintiff relies for its cause of action is § 523(a)(2)(A) of the Bankruptcy Code, which sets forth the fundamental axiom of bankruptcy jurisprudence, that those debts incurred by a false pretense, a false representation, or actual fraud are not dischargeable in bankruptcy. *Cohen v. de la Cruz*, 523 U.S. 213, 217, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (1998); *American Express Travel Related Services Co., Inc. v. Rusu (In re Rusu)*, 188 B.R. 325, 328 (Bankr.N.D.Ga.1995). Specifically, § 523(a)(2)(A) of the Bankruptcy Code provides that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

The facts of this case, upon which the Plaintiff relies for its assertion of nondischargeability, are briefly as follows:

In October of 1994, the Defendant responded to an advertisement in a magazine advertising a "Cash Can Recycling Machine" (hereinafter referred to as the "Cash Can") that would purportedly produce a substantial cash flow through the collection and recycling of aluminum cans. The advertisement was sponsored by the Aluminum Recovery Corporation which has (or had) an office in Tampa, Florida. After considering the matter, the Defendant decided to purchase a "Cash Can" from the Aluminum Recovery Corporation, and to get matters started, the Defendant sent a check to the Aluminum Recovery Corporation for Five Thousand dollars ($5,000.00). Thereafter, to finance the remainder of the purchase price, the Defendant entered into a "finance lease" arrangement with the Plaintiff which provided that the Plaintiff would purchase the "Cash Can" and then lease it back to the Defendant. The payment terms of this lease agreement provided that it would be thirty-six (36) months in duration, and that the Defendant's monthly payment obligation to the Plaintiff would total One Thousand Six Hundred Ninety-four and 40/100 dollars ($1,694.40).

As a condition to providing the financing for the lease, the Defendant was required to verify, on more than one occasion, that she had received the "Cash Can," and that the "Cash Can" was in good working order. The Defendant complied with this requirement by attesting to both the receipt and good working condition of the "Cash Can." Nevertheless, as the "Cash Can" was to be set up in Florida, and the Defendant was in Ohio, the Defendant, by her own admission, did not actually have personal knowledge as to whether her as-

sertions regarding the "Cash Can" were true. However, according to the Defendant, her representations as to the receipt and condition of the equipment, although not based upon first hand knowledge, were made after consulting with both the Aluminum Recovery Corporation and a representative of the Plaintiff.

Sometime in 1996 it was discovered that the "Cash Can" had never been delivered, and that the Aluminum Recovery Corporation had, in effect, perpetrated a fraud upon the Defendant. As a result, the Defendant sustained an estimated loss of Fifty-one Thousand dollars ($51,000.00).[1] Thereafter, and as a direct consequence of this loss, the Defendant in May of 1999 petitioned this Court for relief under Chapter 7 of the United States Bankruptcy Code. In response, the Plaintiff filed the instant adversary proceeding asserting that even though the Defendant was allegedly wronged by the Aluminum Recovery Corporation, it was itself defrauded by the Defendant's false representations concerning the receipt and the condition of the "Cash Can." In particular, the Plaintiff asserts that the Defendant "ignores the fact that she herself perpetrated a fraud on Colonial Pacific because it was she and she alone that represented to Colonial Pacific, on multiple occasions, that she had received and inspected the equipment and had concluded that it was satisfactory." (Plaintiff's Motion for Summary Judgment at pg. 4). Accordingly, the Plaintiff asserts that based upon the Defendant's admitted misrepresentations, it is entitled to a finding of nondischargeability as a matter of law. The Defendant, although not in the least denying that it misrepresented to the Plaintiff the existence and condition of the "Cash Can," asserts that as she was in essence duped into making a false representation; her actions, as a matter of law, do not fall with the ambit of § 523(a)(2)(A)'s exception to discharge. In addition, the Plaintiff calls the Court's at-

tention to certain supposed ambiguities contained in the Parties' lease agreement.

## LEGAL ANALYSIS

■ In order to establish the nondischargeability of a debt under § 523(a)(2)(A), five elements must be established. These elements are: (1) the debtor made false representations, (2) the debtor knew such representations to be false at the time they were made, (3) the representations were made with the intent to deceive the creditor, (4) the creditor relied on the representations, and (5) the creditor's loss was the proximate result of the misrepresentation having been made. *Fifth Third Bank of Northwest Ohio, N.A. v. Spitler (In re Spitler)*, 229 B.R. 1, 4 (Bankr.N.D.Ohio 1998); *citing In re Phillips*, 804 F.2d 930, 932 (6th Cir.1986). With respect to the Plaintiff's establishment of these elements, both Parties ask the Court to grant summary judgment in their favor.

■ The primary purpose of the summary judgment motion is to enable a trial court to readily dispose of cases on matters of law where it is evident that no material controversy of fact exists. In other words, a summary judgment motion determines the necessity of a trial. *Kirkland v. United States*, 930 F.Supp. 1443, 1445 (D.Colo.1996). Nevertheless, the summary judgment motion is not a procedural shortcut, and should only be used after a court is absolutely convinced that the requirements needed to grant the motion have been satisfied. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

■ In a bankruptcy proceeding, the standard for a summary judgment motion is set forth in Bankruptcy Rule 7056 and provides, like the Federal Rules of Civil Procedure, that: A movant will prevail on a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, togeth-

---

**1.** This amount is taken from the Defendant's bankruptcy schedules.

er with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making this determination, the Court is directed to view all facts in the light most favorable to the nonmoving party. *Matsushita v. Zenith Radio Corp.,* 475 U.S. 574, 586–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also In re Bell,* 181 B.R. 311 (Bankr.N.D.Ohio 1995). In addition, in cases such as this where the Parties have filed Cross Motions for Summary Judgment, the Court must consider each motion separately, since each party, as a movant for summary judgment, bears the burden of establishing the nonexistence of genuine issues of material fact, and that party's entitlement to judgment as a matter of law. *In re Rehab Project, Inc.,* 238 B.R. 363, 369 (Bankr.N.D.Ohio 1999). In this regard, the Court will begin its analysis by first examining the Plaintiff's entitlement to Summary Judgment.

■■■ Any party who seeks to hold a debt nondischargeable under § 523(a)(2)(A) bears the burden to prove, by a preponderance of the evidence, that all the elements required under the section have been met. *AT&T Universal Card Services Corp. v. Dietzel (In re Dietzel),* 245 B.R. 747, 753 (Bankr.D.Mass.2000). In the context of a Motion for Summary Judgment, this means that the Plaintiff must not only satisfy its initial burden of production by demonstrating that there is no genuine dispute as to any material fact, but it must also satisfy the ultimate burden of persuasion on the claim itself by showing that it would be entitled to a judgment as a matter of law if a trial were conducted. *Provenza v. Gulf South Administrative Services, Inc.,* 67 F.Supp.2d 617, 619 (M.D.La.1999). In conducting such an analysis, however, a court original-

ly need only concern itself with whether the moving party has met its initial burden of production, because upon such a showing, the party not bearing the burden of proof at trial is required to come forward with evidence which would demonstrate the existence of a genuine issue for trial. *Id.* In support of its compliance with this standard, the Plaintiff, in essence, argues that as the Defendant has admitted that she made various misrepresentations to the Plaintiff, all the elements required under § 523(a)(2)(A) have been met. The Court must however disagree.

■■■ Under § 523(a)(2)(A), a false representation standing alone does not, as a matter of law, mandate a finding of nondischargeability under § 523(a)(2)(A). *See Van Wert Nat'l Bank v. Druckemiller (In re Druckemiller),* 177 B.R. 859, 861 (Bankr.N.D.Ohio 1994) (if there is room for an inference of honest intent, the question of nondischargeability must be resolved in favor of the debtor). Instead, under § 523(a)(2)(A) for a debt to be found nondischargeable on the basis of fraud or a false misrepresentation, a creditor must still establish that it was the debtor's actual intent to deceive the creditor. *Colonial Nat'l Bank v. Leventhal (In re Leventhal),* 194 B.R. 26, 30 (Bankr.S.D.N.Y.1996) (the statutory language of § 523(a)(2)(A) focuses on the debtor's state of mind). For example, a debtor who makes a false representation without knowledge of the statement's falsity, is still entitled to have any debt incurred thereby discharged.[2] Nonetheless, the difficulty with determining if a debtor actually intended to defraud a creditor for purposes of § 523(a)(2)(A) is that resolving such an issue necessarily calls into question the debtor's state of mind. As such the credibility of the debtor is implicated, and as stated by the Fifth Circuit Court of Appeals in *Guillory v. Domtar Industries, Inc.,*

---

2. This statement, however, does not apply if the debtor makes the misrepresentation with reckless disregard to the truth or falsity of the statement. *Bowyers True Value Hardware, Inc. v. Beverly,* 95 B.R. 500, 502 (Bankr.N.D.Ohio 1989).

[c]redibility determinations ... are within the province of the fact-finder. Only through live cross-examination can the fact-finder observe the demeanor of a witness and assess his credibility. A cold transcript of a deposition is generally no substitute because it cannot unmask the veracity of a testifying witness clad in a costume of deception; it cannot unveil that a seemingly well-groomed witness is coming apart at the seams: that he fidgets when answering critical questions, his eyes shift from the floor to the ceiling, and he manifests all other indicia traditionally attributed to perjurers.

95 F.3d 1320, 1327 n. 4 (5th Cir.1996) (internal quotations and citations omitted). *United States v. USX Corp.*, 68 F.3d 811, 827 (3rd Cir.1995). Therefore, for these reasons, state of mind issues, such as whether a person acted in a fraudulent matter, are generally not to be disposed of upon summary judgment.

 This, however, does not mean that summary judgment is per se inappropriate with issues concerning a person's state of mind. For example, evidence based upon improbable inferences, conclusory allegations, and unsupported speculation will not defeat a motion for summary judgment. *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990); *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 159 (Bankr.N.D.Ohio 1998). In this case, however, the Defendant has offered plausible explanations for her conduct, which if true could potentially negate any inference of her fraudulent intent (i.e., the Defendant asserts that she was mislead into making a false representation). Consequently, the Court simply cannot find that the Defendant's misrepresentations, as a matter of law, denote that she actually intended to deceive the Plaintiff under the standards set forth in § 523(a)(2)(A). Accordingly, the Court now turns to address the Defendant's assertion that she is entitled to Summary Judgment. However, before doing so, the Court would like to point out that this holding does not mean that the Defendant's misrepresentations are insignificant. In fact, just the opposite is true. Nevertheless, the Defendant's misrepresentations merely go to the weight of the evidence and as such, the misrepresentations made by the Defendant must simply be considered against the credibility the Court attaches to any trial testimony that may be offered by the Defendant. *See Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1285 n. 10 (4th Cir.1987) (summary judgment hearing is not the proper forum for assessing the relative weight of conflicting evidence).

 A lighter burden is imposed upon a party moving for summary judgment who, like the Defendant, does not have the burden of proof at trial. In particular, such a party need only point to the insufficiency of the other side's evidence, at which point the burden shifts to the nonmoving party to raise genuine issues of fact by substantial evidence. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In support of her Motion for Summary Judgment, the Defendant relies primarily upon the notion that because she was defrauded herself, her actions vis-a-vis the Plaintiff cannot, as a matter of law, be considered fraudulent for purposes of § 523(a)(2)(A). However, as this Court stated above, the Defendant's admitted misrepresentations are strong evidence that she did, in fact, intend to defraud and/or misrepresent the Plaintiff. Consequently, it cannot be held, as a matter of law, that the Defendant did not actually intend to defraud the Plaintiff for purposes of § 523(a)(2)(A). Moreover, the Defendant herself points out in her Response to the Plaintiff's Motion for Summary Judgment that the Parties disagree over the role the Plaintiff played in the transaction which took place between the Defendant and the Aluminum Recovery Corporation; thus potentially raising a genuine issue of fact concerning whether the Plaintiff justi-

fiably relied[3] on the representation(s) made by the Defendant, as is required under the fourth element of the test set forth under § 523(a)(2)(A). Therefore, for these reasons, the Court must deny the Defendant's Motion for Summary Judgment.

One final note: the Plaintiff also asserts in its Amended Complaint that the Defendant's discharge should be denied and that the Defendant engaged in the fraudulent transfer of a parcel of real property. At this time, however, the Court declines to specifically address these issues as their determination is likely dependent upon any decision reached in the Plaintiff's Complaint to Determine the Dischargeability of Debt. In reaching all the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

*ORDERED* that the Motion for Summary Judgment submitted by the Plaintiff, Colonial Pacific Leasing, be, and is hereby, DENIED; and that the Motion for Summary Judgment submitted by the Defendant, Nancy Mayerson, be, and is hereby, DENIED.

It is *FURTHER ORDERED* that this matter be, and is hereby, set for a Trial on Wednesday, October 18, 2000, at 10:00 A.M., in Courtroom No. 1, Room 119, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio.

It is *FURTHER ORDERED* that on, or before Monday, October 9, 2000, the Parties exchange and file with the Court pretrial memoranda, lists of witnesses, lists of exhibits, and stipulations.

It is *FURTHER ORDERED* that the failure to file any of the above items may result in the Trial being continued, witnesses or exhibits not being introduced into Trial, or sanctions being imposed by the Court.

It is *FURTHER ORDERED* that the Plaintiff, in its pretrial memoranda, state with particularity the statutory authority upon which its causes of action rely.

---

**3.** In *Field v. Mans,* the Supreme Court held that the standard of reliance required under § 523(a)(2)(A) is that of justifiable reliance.

516 U.S. 59, 74–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)