In re Helen J. HATCHER a/k/a
Hopkins, Debtor.

PEOPLE OF the STATE OF ILLINOIS,
ex rel. ILLINOIS DEPARTMENT
OF PUBLIC AID, Plaintiff,

v.

Helen J. HATCHER a/k/a
Hopkins, Defendant.

Bankruptcy No. 87 B 16813.
Adv. No. 89 A 1075.

United States Bankruptcy Court,
N.D. Illinois, E.D.

March 6, 1990.

Patrick McCloskey, Asst. Atty. Gen., Welfare Litigation Div., Chicago, Ill., for State.

E. Paul Rustin Ltd., Chicago, Ill., for debtor.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

The Plaintiff, PEOPLE OF THE STATE OF ILLINOIS, ex rel. ILLINOIS DEPARTMENT OF PUBLIC AID ("IDPA"), by its attorney, NEIL F. HARTIGAN, Attorney

General, State of Illinois, pursuant to Section 523(a)(2) and Section 523(a)(7) of the Bankruptcy Act (11 U.S.C. Section 523(a)(2) and 11 U.S.C. Section 523(a)(7)), has moved this Court to have the penalty and/or debt of the Defendant–Debtor, HELEN HATCHER a/k/a HOPKINS determined to be non-dischargeable. Defendant was found in default and evidence taken on prove-up. The Court makes and enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. The IDPA is a state agency with offices in Chicago, Illinois. Its responsibilities include *inter alia* determining eligibility of applicants for public assistance benefits under a variety of programs, including the General Assistance Program and the Food Stamp Program.

2. Helen Hopkins applied for public assistance benefits through the IDPA in January, 1978. Helen Hopkins applied for assistance representing in writing that she was unemployed, and thereby represented her financial condition.

3. The IDPA approved Helen Hopkins' application for General Assistance and Food Stamp benefits in January, 1978.

4. When Helen Hopkins applied for public assistance benefits she was informed of her duty to report a "change of status" to her caseworker. Ms. Hopkins was further informed that a change of status is defined as a change in employment status, a change in household composition, a change of address, the receipt of income or assets, and a change in income maintenance needs.

5. In March, 1979, Helen Hopkins procured gainful employment with the Ascot Motel located in Chicago, Illinois.

6. In November, 1979, Helen Hopkins met with her caseworker for a regular redetermination of her public assistance benefits. For General Assistance cases in the city of Chicago, a redetermination is required every five (5) months following the initial redetermination of eligibility.

7. It is the duty of every recipient of public assistance to report a change of status including any new employment within five (5) days of the change to their caseworker at the IDPA.

8. Helen Hopkins failed to notify the IDPA of her employment with the Ascot Hotel although such employment was a change in her status.

9. Helen Hopkins was continuously employed at the Ascot Motel from March, 1979 to April, 1980.

10. During her employment, Helen Hopkins was compensated by her employer $4,998.75 as salary for the period of March, 1979 to April, 1980. During that same period of time, public assistance in the amount of $5,050.00 was given to Helen Hopkins by the IDPA.

11. Throughout her employment at the Ascot Motel, Helen Hopkins continued to receive public assistance because the IDPA continued to rely during that period on her original representation that she was not employed and because she did not report her employment.

12. As a result of Helen Hopkins' failure to report her employment to the IDPA, Helen Hopkins received a total assistance overpayment of $2,493.10 during the period March, 1979 to April, 1980. An "overpayment" is the amount received by the client which is in excess of the correct grant amount. To arrive at the total overpayment amount, the incorrect amount of assistance received for each month of the overpayment period is added. In her case, due to her employment salary level, she was not entitled to any of the public assistance she received during the aforesaid period. By endorsing each assistance check to which she was not entitled, Debtor–Defendant in effect misrepresented in writing that she remained unemployed, and intended to so deceive IDPA. The IDPA relied reasonably on each such representation, and when it learned the truth made demands for the sum of $2,493.10 upon Helen Hopkins. Helen Hopkins has not paid that sum or any part of it.

13. The IDPA learned of Helen Hopkins' failure to report her change of status through employment at the Ascot Motel by

a routine cross match with records of the Illinois Department of Revenue as to employed persons, and it terminated her public assistance in April, 1982.

14. In addition to recovery of the $2,493.10 in excess payments, the state seeks recovery of a penalty in the same amount pursuant to Ill.Rev.Stat. ch. 23, ¶ 8A-7(a) (1987). Since the state only seeks a total recovery of $2,493.10 for both penalty and overpayment, and in the absence of any defense, the Court finds the full maximum penalty of $2,493.10 to be warranted.

15. Additional facts stated in the Conclusions of Law will stand as further Findings of Fact.

## CONCLUSIONS OF LAW

1. This suit requesting determination of nondischargeability of a debt in bankruptcy arises under Section 523(a)(2) and Section 523(a)(7) of the Bankruptcy Code, 11 U.S.C. Sections 523(a)(2) and 523(a)(7).

2. Core jurisdiction is conferred on this Court by 28 U.S.C. Section 157(b)(2)(I).

3. The IDPA is governed by the Public Aid Code which was approved by the Illinois General Assembly on April 11, 1967. *Ill.Rev.Stat.* ch. 23, ¶ 1-1 *et seq.* (1987).

4. The public purpose of the Code is to provide financial aid and services to alleviate poverty and promote the general welfare of the people of the State of Illinois. The Code states in pertinent part:

> To accomplish this purpose, this Code authorizes financial aid and social welfare services for persons in need thereof by reason of unemployment, illness, or other cause depriving them of the means of a livelihood compatible with health and well being, and provide for the development, use and coordination of all resources in this State, governmental and private. (Emphasis added.) *Ill.Rev. Stat.* ch. 23, ¶ 1-1 (1987).

5. Helen Hopkins' application for General Assistance was approved in January of 1978. At the time her application was approved, Helen Hopkins was unemployed. Each application for General Assistance is determined on a "Need" basis. "Need" is defined as:

> Income available to the person, when added to contribution in money, substance, or services from other sources, including contributions from legally responsible relatives, must be insufficient to equal the grant amount established by Department regulation for such a person. *Ill.Rev.Stat.* ch 23, ¶ 6-1.2 (1987).

6. When applicants are interviewed for public assistance, they are regularly told by the caseworker that it is an applicant's duty to inform the caseworker of any change of status of their present condition. The Debtor-Defendant was so informed. The statute requires reporting of any change of status:

> It is the duty of every applicant and recipient to notify promptly the county department or the supervisor of general assistance, as the case may be, of any change of status with respect to this property, or need, or family composition, amount of income, money contributions and other support, from whatever source, occurring, in the case of an applicant, between the time of his filing an application for financial aid and the issuance of the grant, and in the case of the recipient, during the period that he receives financial aid.

> If an applicant or recipient fails to give prompt notice of changes in his circumstances, and as a result financial aid is given to which he is not entitled, he will be liable to the county department or to the local governmental unit, as the case may be, for refunding a sum of money up to but not in excess of the entire amount of financial aid provided. Unless the refund is made, the amount may be recovered in a civil action. *Ill.Rev.Stat.* ch. 23, ¶ 11-18 (1987).

7. The Public Aid Code defines "Recipient Fraud" as:

> Any person, who by means of any false statement, willful misrepresentation or *failure to notify the country department or the local government,* as the case may be, *of a change in his status* as required by Sections 11-18 and 11-19,

or any person who knowingly causes any applicant or recipient without knowledge to make such a false statement or willful representation, or by withholding information causes the applicant or recipient to fail to notify the county department or local governmental unit as required, *for the purpose of preventing the denial, cancellation or suspension of any grant,* or a variation in the amount thereof, or through other fraudulent device obtains or attempts to obtain, or aids and abets any person in obtaining public aid under this Code to which he is not entitled *is guilty of a violation of this Article and shall be punished as provided in Section 8A-6.* (Emphasis added.) *Ill. Rev.Stat.* ch. 23, ¶ 8A-2(a) (1987).

8. During the period of January, 1978 and April, 1982, Helen Hopkins was a recipient of Public Assistance, within the purview of Chapter 23 of the Illinois Revised Statutes, from the State of Illinois through its agent the IDPA.

9. During the period of March, 1979 to April, 1980, Helen Hopkins was gainfully employed by the Ascot Motel and during that period of time, Helen Hopkins continued to receive Public Assistance.

10. During this period of employment, Helen Hopkins met with her caseworker for a redetermination hearing. Helen Hopkins failed to report her change of status through employment to her caseworker. As a result of this failure, Helen Hopkins continued to receive Public Assistance.

11. During this period of receipt of wages from her employment, Helen Hopkins would not have received Public Assistance benefits but for the fact that she failed to notify IDPA of her employment, in violation of Section 8A-7 of the Illinois Public Aid Code which states in pertinent part:

(a) A person who receives financial aid by means of a false statement, willful misrepresentation or by his failure to notify the County Department or local governmental unit, as the case may be, of a change in his status as required by Sections 11-18 and 11-19, for the purpose of preventing the denial, cancella-

tion or suspension of his grant, or a variation in the amount thereof, or by other fraudulent device, or a person who knowingly aids or abets any person in obtaining financial aid for which he is not eligible, shall be answerable to the country department or the local governmental unit, as the case may be, for refunding the entire amount of aid received. If the refund is not made, it shall be recoverable in a civil action from the person who received the aid, or from anyone who willfully aided such person to obtain the aid. *If an action which would be unlawful under Section 8A-2 is proven the court may as a penalty assess an additional sum of money, not to exceed the entire amount of aid provided, against the recipient* or against any person who willfully aided the recipient. If assessed, the penalty shall be included in any judgment entered for the aid received, and paid to the county department or the local governmental unit, as the case may be. Upon entry of the judgment a lien shall attach to all property and assets of such person until the judgment is satisfied. *Ill.Rev.Stat.* ch. 23, ¶ 8A-7(a) (1987). (Emphasis supplied.)

12. Helen Hopkins failed to report and thereby willfully concealed from the IDPA the fact that she was employed with Ascot Motel from March, 1978 to April, 1980, earning approximately $5,998.10 during that period. Of the public assistance given to Helen Hopkins, $2,493.10 was an over issuance which resulted from her continuing false misrepresentation of nonemployment every month that she accepted welfare checks while failing to notify IDPA of her employment.

13. Section 523(a)(2) the Bankruptcy Code (11 U.S.C. § 523), provides that:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; or. . . .

■ 14. While the Debtor's original representation that she was unemployed apparently was true, it became false two months later. By continuing to accept payments, each acceptance was tantamount to an intentional false representation in writing that she remained unemployed. The agency reasonably relied on those representations. Where a debtor receiving benefits fails to inform a welfare agency of new employment, but accepts and thereby fraudulently continues to receive benefits, and the agency reasonably relies on debtor's original reported unemployed status in continuing benefits, the debt to the agency resulting from such improperly paid benefits is nondischargeable under 11 U.S.C. § 523(a)(2)(A). *In re Jones*, 37 B.R. 195, 196 (E.D.Mo.1984). *See also In re Berry*, 3 B.R. 430 (Bankr.D.Or.1980). Therefore, the debt of $2,493.10 that arose under *Ill. Rev.Stat.* ch. 23, ¶ 8A–7(a) (1987) is nondischargeable under § 523(a)(2)(A).

■ 15. The IDPA also seeks a judgment of nondischargeability under 11 U.S.C. § 523(a)(2)(B). At least one court has found nondischargeability under that provision in similar circumstances. *In re Jones*, 37 B.R. 195, 196 (E.D.Mo.1984) (statement of non-employment true on date of application for public aid, but employment obtained a few days later and kept hidden from agency). Section 523(a)(2)(B) is applicable when a debtor obtains property "by . . . use of a statement in writing that is materially false respecting the debtor's . . . financial condition." Arguably

Debtor obtained extra benefits "by use" of her application in the sense that the application is what originally began the stream of benefit payments to her and her failure to disclose her subsequent employment continued these payments. However, this argument seems attenuated. Section 523(a)(2)(B) looks at the accuracy of the financial statement and reliance on it at the time it was presented, not whether subsequent events make the statement inaccurate at some later time. Ginsburg on *Bankruptcy* ¶ 1106[e][1] (2d ed.). Moreover, the later endorsement of checks, although false statements under § 523(a)(2)(A), cannot qualify as "financial statements" under § 523(a)(2)(B). *Ginsberg, Id.* at § 1106(e) at fn. 320 and cases cited. The problem of her failure to disclose that she later became employed is addressed in § 523(a)(2)(A). In the absence of well-reasoned authority that an initially accurate financial statement can be rendered materially false by the failure to disclose subsequent events, grounds for denying discharge here are not found under § 523(a)(2)(B).

■ 16. Section 523(a)(7) of the Revised Bankruptcy Act (11 U.S.C. § 523), provides that a bankrupt's discharge in bankruptcy will be barred:

to the extent such a debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

(A) relating to a tax not specifically specified in paragraph (1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.

17. As a proximate result of the Defendants' continuing misrepresentation and failure to notify IDPA in violation of Sections 8A–7 and 8A–2 of the Illinois Public Aid Code, the State of Illinois was and is damaged in the sum of $2,493.10 paid out in assistance overpayments, and it also seeks and is entitled to collection of the same amount as a "penalty" under § 8A–7

of the Illinois Public Aid Code. Such "penalty" is a penalty within the meaning of 11 U.S.C. § 523(a)(7).

18. The penalty debt of $2,493.10 which is owed by the Defendant–Debtor Helen Hopkins to the Plaintiff State of Illinois ex rel. Illinois Department of Public Aid is nondischargeable under 11 U.S.C. § 523(a)(7).

19. The Plaintiff could have sought nondischargeability as to both the debt found nondischargeable under 11 U.S.C. § 523(a)(2)(A) and the penalty found nondischargeable under 11 U.S.C. § 523(a)(7). However, the complaint prayed for only one recovery of $2,493.10. Since this is a defaulted case, the state is limited in recovery to that prayed for in its Complaint.

Judgment will enter accordingly.