**In the MATTER OF: Belinda NGWANGU, Debtor.**

**Georgia Department of Human Services, Plaintiff**

v.

**Belinda Ngwangu, Defendant.**

**CASE NUMBER: 14–51029–PWB**
**ADVERSARY PROCEEDING NO. 14–5122**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed April 7, 2015

Brittany H. Bolton, Georgia Dept. of Law, Atlanta, GA, for Plaintiff.

Jon Erik Heath, Atlanta Legal Aid Society, Inc., Atlanta, GA, Yazmin Sobh, Gwinnett Legal Aid, Lawrenceville, GA, for Defendant.

## ORDER

Paul W. Bonapfel, U.S. Bankruptcy Court Judge

Georgia Department of Human Services ("GDHS") contends that the Debtor received an overissuance of benefits under the Food Stamp Program due to misrepresentations about her household income and size and that the debt arising from her "intentional violation" of the Food Stamp Program is excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 1328(a)(2). GDHS seeks summary judgment on the § 523(a)(2)(B) count.

The Debtor contends that her conduct was not deceptive or wrong and seeks summary judgment and dismissal of the §§ 523(a)(2) and (a)(4) counts. For the reasons set forth below, the Court denies GDHS's motion and grants the Debtor's motion in part and denies it in part.

### Factual Background

The Debtor, Belinda Ngwangu, is an immigrant and mother of four children. She received food stamp benefits between December 2009 through May 2011. A food stamp application requires an applicant to disclose detailed information about household composition and income. At the time she applied for benefits and while receiving them, the Debtor contends she was separated from her husband, Guillaume Ngwangu, and that he did not reside with her.

GDHS contends that the Debtor's husband did indeed reside with her while she was receiving benefits as reflected by his wage forms, a Georgia Registration and Title information System vehicle search, and various other official records. The Debtor asserts that she merely permitted him to use her address for mailing and registration purposes because he did not maintain a stable residence. The Debtor also asserts that she informed her caseworker that her estranged husband was using her address, but was not living with her.

GDHS conducted an investigation and concluded that the Debtor's husband was a member of the household. The inclusion of his wages in the Debtor's household budget results in an overpayment of $9,165.00 in food stamp benefits.

On May 22, 2012, GDHS sent the Debtor a letter notifying her that it was scheduling an "Administrative Disqualification Hearing," the purpose of which was to determine "if there is clear and convincing evidence to show that you committed an intentional program violation." [Doc. 26–16, Exh. A–6]. An Administrative Disqualification Hearing is conducted before an administrative law judge and Georgia's Office of State Administrative Hearings.

At the September 14, 2012, hearing, the Debtor appeared, but the hearing was not held and the matter was reset by agreement of the parties. On September 24, 2012, a notice continuing the matter to October 12, 2014, was issued. [Doc. 26–18, Exh. C]. The parties differ as to the next procedural step.

The Debtor contends she received a letter in the mail dated October 2, 2012, from GDHS. This letter notified her, "We have

scheduled or are planning to schedule your case for an Administrative Disqualification Hearing.... In the event that a Disqualification Hearing is scheduled, you will be provided with written notice by mail at least 30 days in advance of the date of the hearing." [Doc. 27–4, Exh. B]. This letter further provided the Debtor with an opportunity to waive her right to a hearing. The letter explained, "If you choose to sign the waiver, you must do so no later than 11–1–2012 .... We will proceed with the Administrative Disqualification Hearing after that date." *Id.* The Debtor did not sign it and waited for a court hearing. The Debtor has a copy of this letter, but GDHS does not.[1]

Instead, on October 12, 2012, the administrative disqualification hearing went forward without the Debtor present. GDHS contends that the Debtor had notice of the October 12 hearing and did not appear. The Debtor, as set forth above, contends that she was led to believe by the October 2 letter that a hearing would be scheduled after November 1, 2012.

At the October 12 hearing, a representative of GDHS offered a recitation of its investigation including its documentary evidence that the Debtor's estranged husband resided with her during the time she was receiving benefits and that she omitted him from the household resulting in an overpayment of benefits.

On October 17, 2012, a "Final Decision" was issued by the State Administrative Hearing Judge disqualifying the Debtor from the Food Stamp Program and affirming GDHS' decision to recoup the overpayment of benefits. The Final Decision contained three findings of fact: (1) the Debtor failed to report correct household income and failed to report correct household composition in a timely manner as required; (2) she received an overissuance of benefits in the amount of $9,165.00; and (3) this was her first "Intentional Program Violation." Based on these findings, the Judge concluded that the Debtor "received an overissuance of Food Stamp Benefits for intentionally violating the Food Stamp Program Regulations. 7 C.F.R. § 273.16(c)." [Doc. 26–19, Exh. D].

GDHS has received payment for a portion of the alleged overpayment of benefits and the remaining balance owed is approximately $8,525.00.

### The positions of the parties

GDHS seeks summary judgment on the theory that the findings and conclusions in the Final Decision are entitled to preclusive effect and, therefore, that its debt is nondischargeable pursuant to § 523(a)(2)(B).

The Debtor contends that summary judgment is inappropriate because the Final Decision does not satisfy the elements necessary for the application of issue preclusion. Moreover, the Debtor contends that she is entitled to summary judgment on the § 523(a)(2) claim because she did not have the intent to deceive GDHS when she applied and received food stamp benefits. The Debtor also seems summary judgment and dismissal of the § 523(a)(4) count on the theory that her conduct is not defalcation, embezzlement, or larceny, as a matter of fact and law. GDHS has not responded to the Debtor's motion with respect to the § 523(a)(4) claim.

The Court will examine each argument in turn.

---

1. The October 2 letter is substantially similar to the May 22 letter in content. The May 22 letter is titled, "Waiver of Administrative Disqualification Hearing Appointment Letter." The October 2 letter is entitled, "WHD Request Through Mail." Both letters are signed by Rodney Philmore, Agent of the Office of Inspector General, Benefit Recovery Unit.

### Section 523(a)(2)

GDHS contends that the doctrine of issue preclusion prevents the relitigation of its claim and, based upon the findings and conclusions in the state administrative proceeding, the debt owed by the Debtor is nondischargeable pursuant to § 523(a)(2)(B).[2]

■ Issue preclusion prevents the relitigation of issues already litigated and determined by a valid and final judgment in another court. The doctrine of issue preclusion applies in a discharge exception proceeding in bankruptcy court. *See Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991); *Hoskins v. Yanks (In re Yanks)*, 931 F.2d 42, 43 n. 1 (11th Cir.1991).When determining the preclusive effect of a state court judgment in dischargeability litigation, it is unsettled whether a bankruptcy court must apply state or federal issue preclusion law. *See Colorado West Trans. Co., Inc. v. McMahon (In re McMahon)*, 356 B.R. 286 (Bankr.N.D.Ga.2006); *rev'd and remanded*, 380 B.R. 911 (N.D.Ga. 2007). The decision is not determinative in this case.

■ Noting that Georgia law does not set forth a "canonical list" of elements necessary for issue preclusion, the Eleventh Circuit has stated that a party seeking to assert issue preclusion under Georgia law must demonstrate that "(1) an identical issue, (2) between identical parties, (3) was actually litigated and (4) necessarily decided, (5) on the merits, (6) in a final judgment, (7) by a court of competent jurisdiction." *Community State Bank v. Strong*, 651 F.3d 1241, 1264 (11th Cir.2011)

(citations omitted). These requirements are comparable to the federal rule of issue preclusion. *In re Bush*, 62 F.3d 1319, 1322 (11th Cir.1995).

■ Inherent in the doctrine of issue preclusion is due process. As a result, the United States Supreme Court has recognized that issue preclusion "cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

■ The Court concludes issue preclusion does not apply because the Debtor did not received a full and fair opportunity to litigate this matter in the earlier administrative proceeding.

A "full and fair opportunity" to litigate an issue requires that a litigant have the opportunity to participate, attend, and present her case in a pending action. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

Based on the evidence presented, the Debtor did not receive a full and fair opportunity to litigate the food stamp violation claim because the inconsistent notices of hearing were not reasonable and deprived the Debtor of an opportunity to

---

**2.** GDHS' complaint contends that its claim is excepted from discharge under § 523(a)(2)(A) and (B), but it has moved for summary judgment on its § 523(a)(2)(B) claim only. It is questionable whether § 523(a)(2)(B) is applicable to the facts of this case. Courts are split on the scope of what a statement regarding the Debtor's financial condition encompasses. Nevertheless, whether GDHS proceeds under § 523(a)(2)(A) or § 523(a)(2)(B), the critical issue common to both is whether the Debtor intended to deceive GDHS.

present her objections. Put simply, she did not receive a full and fair opportunity to litigate this matter before the Office of State Administrative Hearings.

The parties' motions and evidence demonstrate three things. The Debtor attended a September hearing at which time she sought to contest GDHS's allegations, but the hearing did not go forward and the matter was rescheduled. A notice of hearing was issued on September 24 granting the GDHS's request for a continuance and notifying the parties that the matter was continued to October 12, 2012. [Doc. 26–18, Exh. C]. On October 2, 2012—eight days after the notice of continuance—the GDHS sent a letter to the Debtor notifying her of a right to waive a disqualification hearing and informing her, "If you choose to sign the waiver, you must do so no later than *11–01–12*. ... We will proceed with the Administrative Disqualification Hearing *after that date*." ·[Doc. 27–4, Exh. B at 2] (emphasis added).

Was the October 2 letter sent in error?· One may never know. The Debtor contends she received it and relied on its contents, believing—quite reasonably—that a notice would be sent scheduling a hearing after November 1, 2012, since that is precisely what the letter stated. The Debtor has produced a copy of the letter. GDHS has not disputed the letter's existence or accuracy and, therefore, the Court concludes that the Debtor received a letter that, under the circumstances, reasonably led her to conclude that a hearing would be held not on October 12, but after November 1.

■ To the extent that GDHS contends that the Debtor could have and should have filed a motion for reconsideration or appeal of the adverse administrative order and that her failure to do so demonstrates that she had a full and fair opportunity to litigate, its logic is fundamentally flawed.

A "full and fair opportunity" does not exist if due process is lacking.

Given these facts, this Court must conclude that the Debtor was denied a full and fair opportunity to litigate this matter in the earlier proceeding.

■ The failure to receive a full and fair opportunity to litigate in the prior proceeding is reason alone to conclude that issue preclusion is inapplicable, but another reason exists. The record before the Court does not demonstrate that the administrative court found as a matter of fact that the Debtor acted with an intent to deceive—a necessary element of either a § 523(a)(2)(A) or § 523(a)(2)(B) claim.

On October 17, 2012, a "Final Decision" was issued by the State Administrative Hearing Judge disqualifying the Debtor from the Food Stamp Program and affirming GDHS' decision to recoup the overpayment of benefits. ·[Doc. 26–19, Exh. D]. The Final Decision contained three findings of fact: (1) the Debtor failed to report correct household income and failed to report correct household composition in a timely manner as required; (2) she received an overissuance of benefits in the amount of $9,165.00; and (3) this was her first "Intentional Program Violation." Based on these ·findings, the Judge concluded that the Debtor "received an overissuance of Food Stamp Benefits for inten·tionally violating the Food Stamp Program Regulations. 7 C.F.R. § 273.16(c)."

The Final Decision is, at best, ambiguous. There is no specific finding that the Debtor failed to report income or household composition with the intent to deceive GDHS. And it is the Debtor's deception—her intent to engage in a scheme to defraud and deceive—that is the critical issue in a § 523(a)(2) claim. Its absence from the administrative judge's findings and conclusions tends to show that the issue of

whether the Debtor intended to deceive was not litigated or necessary to the judgment.

Even if one looks to the regulatory definition of "Intentional Program Violation," [3] the alternative meanings given to the term would still require the Court to draw an inference based on the circumstances that the Debtor acted with the requisite intent to establish the § 523(a)(2) claim. If the Court must draw an inference of a particular fact, then it follows that the fact was not found in the prior proceeding and is not entitled to preclusive effect. Given the state of the record and, more importantly, the failure to accord the Debtor a full and fair opportunity to litigate the claim at the administrative hearing, the Court concludes that issue preclusion is inapplicable.

■ The Debtor's motion for summary judgment on the § 523(a)(2) claim must be denied as well. As noted above, the critical issue in § 523(a)(2) is whether the Debtor intended to deceive GDHS. GDHS contends that the Debtor intentionally omitted her husband's income and his presence in the household in order to obtain food stamp benefits. The Debtor contends that she truthfully submitted information to GDHS and that, while her husband used her address for his own purposes, he did not reside in the household. Since genuine issues of material fact regarding elements of the § 523(a)(2) claim are in dispute, summary judgment is inappropriate for either the GDHS or the Debtor.

*Section 523(a)(4)*

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The Debtor contends that § 523(a)(4) does not apply as a matter of fact or law to the circumstances of this case. GDHS has not responded to this portion of the Debtor's motion for summary judgment.

■ The Court concludes that dismissal of the § 523(a)(4) claim is appropriate because the facts alleged by GDHS do not satisfy the elements of a § 523(a)(4) claim. First, no fiduciary relationship existed between GDHS and the Debtor and, therefore, there was no fraud or defalcation for purposes of § 523(a)(4).

■ In addition, GDHS's allegations do not satisfy the elements of either embezzlement or larceny. Embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Fernandez v. Havana Gardens, LLC,* 562 Fed.Appx. 854, 856 (11th Cir.2014) (citation omitted). Larceny differs from embezzlement in that it requires that the taking of the property be unlawful. *In re Ayers,* 83 B.R. 83 (Bankr. M.D.Ga.1988).

In this case, the Debtor applied for benefits and received them with the authorization of GDHS. No property was "entrusted" to the Debtor in a manner contemplated by the definition of embezzlement and she did not steal any property (to the extent food stamp benefits are

**3.** An intentional program violation is defined as having intentionally, 7 C.F.R. § 273.16(c): (1) Made a false or misleading statement, or misrepresented, concealed or withheld facts; or (2) Committed any act that constitutes a violation of the Food Stamp Act, the Food Stamp Program Regulations, or any State statute for the purpose of using, presenting, transferring, acquiring, receiving, possessing or trafficking of coupons, authorization cards or reusable documents used as part of an automated benefit delivery system (access device).

**366**

property) since it was given to her with the authority of GDHS.

Because the Debtor has established that there are no material facts that can establish a claim under § 523(a)(4), this claim is dismissed.

*Section 1328(a)(2)*

GDHS's complaint seeks a determination that the Debtor's debt is excepted from discharge pursuant to § 1328(a)(2). This is a chapter 7 case, not a chapter 13 case, and, therefore, § 1328(a)(2) is inapplicable to this matter. Although neither party has raised this issue, it is appropriate to dismiss this claim since there is no legal basis for it.

The Court concludes that the Final Decision issued in the administrative hearing is not entitled to preclusive effect and that existence of disputed material facts prevent entry of summary judgment for either party on the § 523(a)(2) claim. The court further concludes that the Debtor is entitled to summary judgment and dismissal of the § 523(a)(4) claim. The Court dismisses the § 1328(a)(2) claim sua sponte. Based on the foregoing, it is

ORDERED that GDHS's motion for summary judgment is denied and the Debtor's motion for summary judgment is denied in part and granted in part. It is

FURTHER ORDERED that the claims seeking a determination of dischargeability under § 523(a)(4) and § 1328(a)(2) are dismissed. The Court shall schedule, by separate order and notice, a trial on the § 523(a)(2) claim.

**IT IS ORDERED**