**IN RE: Dan Henry OLIVER, Jr., Debtor.**

**State of Kansas, ex rel, Lana Gordon, Secretary of Labor, Plaintiff,**

**v.**

**Dan Henry Oliver, Jr., Defendant.**

**Case No. 15–40880**
**AP-Case No. 15–7038**

United States Bankruptcy Court, D. Kansas.

Signed August 4, 2016

Thomas Britt Nichols, Kansas Dept. of Labor, Topeka, KS, for Plaintiff.

Frank D. Taff, Topeka, KS, for Defendant.

**Memorandum Opinion and Order Granting Plaintiff KDoL's Motion for Summary Judgment and Granting in Part, and Denying in Part, Debtor's Objection to Claim**

Janice Miller Karlin, United States Chief Bankruptcy Judge

Plaintiff Kansas Department of Labor ("KDoL") filed a proof of claim in the Chapter 13 bankruptcy case of Debtor/Defendant Dan Henry Oliver, Jr. ("Debtor") arising out of Debtor's receipt of unemployment benefits—some of which benefits KDoL asserts he received fraudulently. KDoL claimed all but $26.67 of its $24,592 claim was secured. Debtor objected to that claim, but only on the basis that no part of it was secured; he admitted the entire claim should instead be allowed as unsecured. Also at issue is KDoL's adversary complaint, which it filed under 11 U.S.C. § 523(a)(2)(A); it seeks a determination that part of the debt Debtor owes will not be discharged if Debtor receives his Chapter 13 discharge.[1]

KDoL has filed two summary judgment motions, one on each issue.[2] The Court finds: (1) KDoL's claim is secured in the amount of $200 and unsecured for the remainder; and (2) that $10,534.72 of KDoL's claim is excepted from discharge in the event Debtor ultimately receives a discharge at the completion of his Chapter 13 plan.

## I. Findings of Fact

### A. Unemployment Benefit Overpayments

KDoL is the state agency responsible for receiving and reviewing all requests for unemployment benefits in Kansas. Before benefits are paid, an applicant must establish s/he is qualified to receive them by supplying certain information; this includes a means-testing of benefits to be made available upon the establishment of eligibility.[3]

Applicants must make a specific request for each employment week, as KDoL makes a benefit calculation for each claimant on a weekly basis. KDoL calculates a recipient's benefits based on a weekly benefit amount, which is the maximum weekly unemployment benefit a single person can receive. It can be reduced to zero depending upon what wages, if any, the claimant actually earned for the applicable week. KDoL will not process a claim for benefits without an affirmative request by the claimant and an affirmative response to the question of whether the claimant is employed and, if so, the amount of wages claimant actually earned for that week.

---

1. AP 15–7038, Doc. 34. All future references to Title 11 of the United States Code will be to section number only.

2. AP 15–7038, Docs. 32 and 33.

3. AP 15–7038, Doc. 34, ¶ 18. *Id.* at ¶ 32. To avoid making multiple pinpoint citations to KDoL's affidavit, the Court notes that most of these facts are taken from that affidavit, including these paragraphs from, and exhibits to, the affidavit: paragraphs 13, 25, 26, 30, 32, 33, 11 and Exhibits 1, 2, 3, 8, and 10.

Between August 9, 2008, and May 16, 2009, Debtor submitted weekly requests to KDoL for unemployment benefits. For that time period, KDoL paid total benefits of $13,246. In requesting these benefits, Debtor represented to KDoL that, for the entire period in question, he received no wages from any source. Several months after the benefits had been paid, however, Debtor's former employer, Shawnee County, informed KDoL that it had actually paid Debtor wages for almost one-third of the weeks Debtor had claimed he was unemployed (specifically, for the weeks ending August 9 through November 8, 2008). A KDoL examiner compared Debtor's submissions with those from Shawnee County and determined that Debtor was not entitled to receive this portion of the benefits paid.

The KDoL examiner made two written determinations regarding Debtor's unemployment claims. The first, mailed to Debtor on June 26, 2009, states that Debtor was ineligible for unemployment insurance benefits under the Kansas unemployment benefit statute for the weeks ending November 8, 2008 through May 16, 2009 because he failed to file the initial claim in the manner KDoL had requested. KDoL determined that Debtor was responsible for $8,234 in overpayments for those weeks.

KDoL mailed its second determination four days later, on June 30, 2009. This determination informed Debtor that the examiner found Debtor had "willfully and knowingly made false representations to receive benefits not due" for the weeks ending August 9 through November 8, 2008. KDoL's second determination resulted in an additional overpayment liability of $5,012. Both determinations advised Debtor he had the right to appeal; Debtor elected not to exercise that right.

In May, 2015, KDoL mailed Debtor a notice that it intended to record a lien against Debtor's real property in Leavenworth County if Debtor did not pay the full balance due—then $24,566.06—within ten days. When Debtor failed to respond, KDoL recorded a notice of lien and notice of intent to levy in June, 2015.

## B. Procedural History

Debtor filed his Chapter 13 bankruptcy on September 1, 2015—about six weeks after KDoL recorded its lien. He listed KDoL on Schedule F as an unsecured creditor. Although KDoL had just advised him the total he owed now exceeded $24,000, he listed KDoL's claim at only $12,926 for "overpayment of UE (unemployment) benefits." KDoL timely filed an adversary complaint alleging that a portion of its claim is nondischargeable under § 523(a)(2)(A) because Debtor received that portion fraudulently.[4] In addition, Debtor objected to KDoL's proof of claim in his main bankruptcy case only on the grounds that the debt was not secured; he never contested the amount or his liability for this sum.[5]

KDoL has now filed two motions for summary judgment—one on its nondis-

4. AP 15–7038, Doc. 1, p. 7. In lieu of an answer, Debtor filed a motion to dismiss KDoL's complaint, asserting that the statute of limitations had run on the debt owed. The Court promptly denied Debtor's motion because the Kansas unemployment benefit statute does not contain a statute of limitations. *Id.* at Doc. 9.

5. Debtor has never disputed KDoL's calculations. On the date of Debtor's bankruptcy petition, the outstanding balance on KDoL's June 26, 2009 determination was $14,241.01 ($8,129 principal and $6,287.01 interest). The outstanding balance on KDoL's June 30, 2009 determination was $10,534.72 ($4,972 principal and $5,562.72 interest). *See* AP 15–7038, Doc. 34, ¶¶ 11.i. and 46, ex. 10.

chargeability complaint and one on the objection to its claim—both supported by an affidavit from Teresa Morris, an employee of KDoL. Although KDoL seems to request, on the one hand, that the Court find it is secured up to $24,566.06, it also essentially admits it is only secured to the value of Debtor's non-exempt property, which it agrees is only $200.[6] KDoL also asks the Court to find that a portion of its claim—$10,534.72—is nondischargeable under § 523(a)(2)(A).[7]

## II. Analysis

An adversary proceeding to determine the dischargeability of a debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I), over which this Court may exercise subject matter jurisdiction.[8]

### A. Motion for Summary Judgment Standards

Federal Rule of Civil Procedure 56 requires a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] When analyzing summary judgment motions, the Court draws all reasonable inferences in favor of the non-moving party.[10] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[11] "Material facts" are those that are "essential to the proper disposition of [a] claim" under applicable law.[12]

The moving party bears the initial burden of demonstrating—by reference to pleadings, depositions, answers to interrogatories, admissions, or affidavits—the absence of genuine issues of material fact.[13] Under the District of Kansas Local Bankruptcy Rules, "[t]he court will deem admitted ... all material facts contained in the statement of the movant unless the statement of the opposing party specifically controverts those facts."[14] Thus, if the moving party meets its initial burden, the nonmoving party cannot prevail by relying solely on its pleadings.[15] "Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting

---

**6.** KDoL does not dispute that the value of Debtor's non-exempt property is only $200, and has stated that "dependent upon the Court's ruling on debtor's objection, KDoL's claim would be amended to conform to property descriptions contained in Debtor's bankruptcy filings." *See* AP 15–7038, Doc. 33, p.11, ¶ Uncontroverted Fact # 21 and Case No. 15–40880, Doc. 1, pgs. 17–18 (Schedules B and C). The Court construes this as KDoL's admission that it is only secured to the extent of $200.

**7.** This amount represents the outstanding balance of principal and interest based on KDoL's June 30, 2009 determination, only. *See* AP 15–7038, Doc. 34, ¶ 11.i., ex. 9.

**8.** 28 U.S.C. § 157(b)(1) and § 1334(b).

**9.** Fed.R.Civ.P. 56, incorporated and applied in bankruptcy courts under Fed. R. Bankr.P. 7056.

**10.** *Taylor v. Roswell Indep. Sch. Dist.,* 713 F.3d 25, 34 (10th Cir.2013).

**11.** *Thom v. Bristol–Myers Squibb Co.,* 353 F.3d 848, 851 (10th Cir.2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

**12.** *Id.*

**13.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**14.** D. Kan. LBR 7056.1(a).

**15.** *U.S. v. Dawes,* 344 F.Supp.2d 715, 717–18 (D.Kan.2004) (citing *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505).

the allegation."[16] The nonmoving party's burden is not high—it need only bring forward some evidence which might lead a trier of fact to return a verdict in its favor, should the case go to trial.[17]

In his responses, Debtor gives blanket denials to KDoL's allegations, but fails to allege any specific facts or produce any evidence contradicting KDoL's allegations. Simple denials, without "specific facts" or "probative evidence,"[18] do not show the presence of a genuine issue of material fact.[19] Therefore, the Court deems admitted all material facts contained in KDoL's motions that are supported "by affidavit, declaration under penalty of perjury, and/or through the use of relevant portions of pleadings, depositions, answers to interrogatories and responses to requests for admissions."[20]

### B. The Morris Affidavit

Debtor first argues that KDoL relies—in bad faith, no less—on a faulty affidavit to support its motions for summary judgment.[21] Rule 56(c)(4) requires that affidavits "used to support or oppose a motion (for summary judgment) . . . be made on personal knowledge, set out facts that would be admissible in evidence, and show that affiant or declarant is competent to testify on the matters stated."[22] Debtor attacks the affidavit of Teresa Morris, KDoL's records custodian, on two counts.

First he argues she lacks the requisite personal knowledge of the facts and therefore the exhibits attached to the affidavit are inadmissible as hearsay. He also argues that because Ms. Morris would be unable to testify at trial, as KDoL did not list her as a witness in the Pretrial Order, the Court somehow cannot consider her affidavit in support of the summary judgment motion.

■ Both arguments are unsupported by law (or logic). Ms. Morris's affidavit explicitly states that the attached exhibits were made as KDoL's customary and usual business records, proximal to the dates indicated.[23] The affidavit details Ms. Morris's extensive knowledge of the processes described therein based on her seventeen year employment with KDoL; it also describes Ms. Morris's familiarity with KDoL's records and record keeping. Debtor attempts no argument that the preparation of the affidavit or the attached exhibits show any lack of trustworthiness.

16. *Id.*

17. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505.

18. *Dawes,* 344 F.Supp.2d at 718.

19. *See Herman v. Brooks (In re Brooks),* Case No. 14–6018, 2016 WL 417352, *5 (Bankr. D.Kan. Feb. 1, 2016) (granting summary judgment in part because the debtors' response failed to support their allegations with any record citation or affidavit and failed to controvert any factual statements contained in the summary judgment motion); *Am. Express Bank v. Mowdy (In re Mowdy),* 526 B.R. 63, 73 (Bankr.W.D.Okla.2015) (finding no facts in dispute because the nonmoving party provided "no affidavit or any other evidentiary materials for the record to support his denial of the undisputed facts").

20. D. Kan. LBR 7056.1(d).

21. Debtor also argues KDoL's motion should be denied outright for being too long, relying on D. Kan. Rule 7.1(e). While the Court certainly agrees that KDoL's memorandum, with minimal editing, could easily have been much shorter and thus more effective, Rule 7.1 only applies to the arguments and authorities section of a motion, which here was twenty pages. *See Azim v. Tortoise Capital Advisors, LLC,* Case No. 13–2267, 2016 WL 3405126, *19, n. 5 (D.Kan. June 21, 2016) ("The local rule applies to the arguments and authorities section of the brief.").

22. Fed.R.Civ.P. 56.

23. AP 15–7038, Doc. 34, ¶ 9.

As a result, Ms. Morris's testimony easily meets the requirements for admissibility at trial—a requirement for summary judgment under Rule 56.[24]

■ Debtor's second argument—which he labels his most persuasive—fares no better. Debtor contends that Ms. Morris's affidavit cannot be used to support KDoL's motion because she was not listed as a witness in the Pretrial Order. Debtor cites conclusively to *American Securit Co. v. Hamilton Glass Co.*[25] to support this contention. The case he cites, however, does not stand for this proposition. Rather, the case states that, for summary judgment purposes, an affiant must be competent to testify at trial because the opposing party lacks an opportunity for cross-examination.[26] Competency to testify at trial implicates a very specific standard analyzed under Federal Rule of Evidence 601;[27] this is a standard clearly met by affiant Morris.

Furthermore, in an agency such as KDoL, the Court suspects that, at any point in time, there could be numerous persons competent to testify about the agency's records. KDoL is not required to list in the Pretrial Order every records custodian then employed by the agency competent to testify about its records. Even more importantly, Ms. Morris's affidavit tracks exactly with KDoL's summary of witness testimony attributed to other in-house witnesses KDoL identified.[28] KDoL's decision to use a different records custodian prejudices Debtor in no way. The Court thus overrules Debtor's frivolous argument.

## C. Nondischargeability under § 523(a)(2)(A)

■ KDoL bears the burden of proof to establish each element of its claim under § 523(a)(2)(A) by a preponderance of the evidence.[29] Subsection (a)(2)(A) excepts from discharge any debt "for money, property, [or] services... obtained by ... false pretenses, a false representation, or actual fraud."[30] To carry its burden, KDoL must show that: "(1) the debtor made a false representation; (2) the debtor intended to deceive the creditor; (3) the creditor relied on the debtor's conduct; (4) the creditor's reliance was justifiable; and (5) the creditor was damaged as a proximate result."[31]

---

**24.** Fed. R. Civ. Proc. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, *set out facts that would be admissible in evidence,* and show that the affiant or declarant is competent to testify on the matters stated.") (emphasis added). The exhibits to which Ms. Morris testifies are admissible into evidence under the exception to the rule against hearsay described by Fed.R.Evid. 803(6): "A record ... [is excepted from the rule against hearsay] if: (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business ...; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness ...; and (E) the opponent does not show that the source of information

or the method or circumstances of preparation indicate a lack of trustworthiness."

**25.** 254 F.2d 889, 893 (7th Cir.1958).

**26.** *Id.*

**27.** Fed.R.Evid. 601 ("Every person is competent to be a witness unless these rules provide otherwise.").

**28.** *See* Pretrial Order, AP 15–7038, Doc. 35, p. 11.

**29.** *See Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

**30.** § 523(a)(2)(A).

**31.** *Ez Loans of Shawnee v. Hodges (In re Hodges),* 407 B.R. 415, 419 (Bankr.D.Kan.

As to the first element, the uncontroverted facts show that Debtor represented to KDoL that he did not make any wages for the weeks ending August 9 through November 8, 2008. In fact, he was then employed by Shawnee County and received wages above his weekly benefit amount. Debtor's representations were false, and the first element of the § 523(a)(2)(A) test is satisfied.

The second element of the § 523(a)(2)(A) test requires a showing of Debtor's intent to deceive, which " 'may be inferred from the totality of the circumstances.' "[32] "The bankruptcy court must consider whether the totality of the circumstances 'present a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor.' "[33] A totality of the circumstances inquiry is fact specific and hinges on the credibility of witnesses.[34] While Debtor argues that no court can ever determine intent on a summary judgment motion,[35] the law is to the contrary. It is not *per se* inappropriate to grant summary judgment when intent is an element of proof.[36]

Debtor also argues that KDoL fails to meet its burden to prove intent because it "presents no facts as to the intent of debtor, only argument and allegations."[37] However, KDoL has alleged several facts, supported by the record, showing that Debtor intended to deceive it into extending unearned benefits.

KDoL's June 30, 2009 determination explicitly states: "It is determined that you (Debtor) willfully and knowingly made false representations to receive benefits not due."[38] Additionally, the uncontroverted facts show that Debtor received $5,012 in benefits based on representations

2009) (citing *In re Davis*, 246 B.R. 646, 652 (10th Cir. BAP 2000)).

**32.** *In re Young*, 91 F.3d 1367, 1375 (10th Cir.1996) (quoting *In re Gans*, 75 B.R. 474, 486 (Bankr.S.D.N.Y.1987)).

**33.** *Groetken v. Davis (In re Davis)*, 246 B.R. 646, 652 (10th Cir. BAP 2000) (quoting 3 NORTON BANKR. LAW & PRACTICE 3D § 57:16 (2016)).

**34.** *See, e.g., Prochaskav v. Marcoux*, 632 F.2d 848, 851 (10th Cir.1980) (noting that "where different ultimate inferences may properly be drawn, the case is not one for summary judgment" because "questions of intent, which involve intangible factors including witness credibility, are matters for consideration of the fact finder after a full trial," but holding that summary judgment was proper where the defendant had not proffered his own affirmative response by affidavit or otherwise, setting forth specific facts showing a genuine issue for trial); *see also Compton v. Herman (In re Herman)*, 355 B.R. 287, 291 (Bankr. D.Kan.2006) (stating that generally "questions involving a person's intent or other state of mind cannot be resolved by summary judgment," but concluding that where there is "conceded or irrefutable evidence" it may make "a trial on the question of the person's state of mind unnecessary").

**35.** *See* AP 15–7038, Doc. 37, p. 13.

**36.** *See Colonial Pac. Leasing v. Mayerson (In re Mayerson)*, 254 B.R. 407, 412 (Bankr. N.D.Ohio 2000) (finding that while "state of mind issues ... are generally not to be disposed of upon summary judgment ... [t]his ... does not mean that summary judgment is per se inappropriate with issues concerning a person's state of mind").

**37.** AP 15–7038, Doc. 37, p. 14.

**38.** *See* AP 15–7038, Doc. 34, ex. 1. While the Court need not decide whether the June 30, 2009 determination should be afforded preclusive effect, it is nonetheless admissible evidence as it "has a tendency to make a fact (Debtor's intent) more or less probable." Fed.R.Evid. 401(a). Thus, Debtor had the *right to present rebuttal evidence* (not denials or allegations) showing that he did not intend to receive benefits improperly. Debtor elected not to do so, and the Court weighs the credibility of the June 30, 2009 determination accordingly.

he knew were false and yet failed to remedy the error, further persuading the Court that Debtor's deception was intentional.[39] Though these facts are circumstantial, Debtor fails to refer to a single portion of the record—whether by affidavit, deposition transcript, or interrogatory answer—specifically controverting KDoL's assertions and showing that a genuine issue exists as required by the local rules.[40] Without an iota of contradictory evidence, the Court finds that Debtor intended to deceive KDoL through his misrepresentations. The second element of the § 523(a)(2)(A) test is thus met.

Regarding the third factor—KDoL's reliance—KDoL paid Debtor a total of $5,012 between August 9 and November 8, 2008 based solely upon Debtor's misrepresented wages. In other words, KDoL relied on Debtor's misrepresentations in calculating and extending unemployment benefits. This satisfies the reliance requirement of the § 523(a)(2)(A) test.

The Court next turns to element four of the § 523(a)(2)(A) analysis—whether KDoL's reliance on Debtor's misrepresentations was justifiable "from a subjective standpoint."[41] This inquiry is fact-intensive and based on the "qualities and characteristics of the particular plaintiff,"[42] though reasonableness is by no means irrelevant.[43]

The Court is well aware that an unemployed worker's prompt receipt of unemployment compensation can mean the difference between having food on the table and going without for many families. As a result, KDoL must have efficient procedures for processing claims and making

---

**39.** *See Morgan Cnty. Hous. Auth. v. Ketcham (In re Ketcham)*, Case No. 04–7183, 2005 WL 2209231, *3 (Bankr.C.D.Ill. Jul. 5, 2005) (finding that "Debtor's continuing acceptance of the housing assistance payments constituted an intentional false representation" when she failed to report additional household income received by her son as social security benefits); *Pub. Emp. Ret. Sys. v. Gadus (In re Gadus)*, 145 B.R. 235, 238–39 (Bankr. N.D.Ohio 1992) (finding that the debtor intentionally defrauded her creditor under § 523(a)(2)(A) by cashing assistance checks without alerting the benefit provider that she was no longer eligible for assistance); *Illinois v. Hatcher (In re Hatcher)*, 111 B.R. 696, 700 (Bankr.N.D.Ill.1990) ("Where a debtor receiving benefits fails to inform a welfare agency of new employment, but accepts and thereby fraudulently continues to receive benefits ... the debt to the agency resulting from such improperly paid benefits is nondischargeable under § 523(a)(2)(A).").

**40.** *See* D. Kan. LBR 7056.1(b) ("A memorandum in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute must be numbered by paragraph [and] refer with particularity to those portions of the record on which the opposing party relies."). The Court envisions that a fact pattern might exist to show that a benefit recipient did not intend to defraud KDoL. *See, e.g., N.J. Dep't of Labor &. Workforce Dev. v. Carey (In re Carey)*, Case No. 08–2934, 2010 WL 936117, *2 (Bankr.D.N.J. Mar. 11, 2010) (finding that the debtor lacked the requisite intent under § 523(a)(2)(A) because she testified in court that she had misunderstood the question of whether she was employed and therefore answered incorrectly); *Ga. Dep't of Human Servs. v. Ngwangu (In re Ngwangu)*, 529 B.R. 358, 365 (Bankr. N.D.Ga.2015) (finding a genuine issue of material fact as to the debtor's intent under § 523(a)(2)(A) where there was evidence that the debtor believed her husband's income was not required for a food stamp application because he did not reside at the home). Debtor does not even attempt to assert such argument here, let alone provide evidence.

**41.** *Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 791–92 (10th Cir.2009) (citing *Field v. Mans*, 516 U.S. 59, 74–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)).

**42.** *Field*, 516 U.S. at 71, 116 S.Ct. 437.

**43.** *Id.* at 76, 116 S.Ct. 437.

benefit determinations in order for claimants to receive the help they need in a timely, consistent fashion. In so doing, KDoL upholds the Kansas legislature's intent in creating the Employment Security Law.[44]

In order to successfully carry out its mission, KDoL accepts unemployment benefit claims in weekly increments and processes each claim on a person-by-person basis. KDoL then pays benefits based on a claimant's weekly, self-reported wages. Only after KDoL later receives information from an employer itemizing what wages or earnings a claimant actually earned can KDoL compare and determine whether the initial benefit calculation was accurate.

Were KDoL required to wait to pay out benefits until after comparing the wages the employer submitted with those submitted by the claimant, claimants would be forced to wait additional time for benefits the legislature has deemed appropriate. KDoL argues, and the Court agrees, that this potential wait time undermines the purpose and function of the Employment Security Law. The requirements of economic security compel an efficient distribution of the social benefits provided by the state for those most in need and certainly justify the procedures used by KDoL.

A second, and similarly compelling, justification for KDoL's processes, which require it to initially rely on the information the claimant provides, is that a claimant is in the best position to know when, where, and for how much s/he is working in a given week. While it is obvious a claimant could abuse this process, it is not unreasonable to expect claimants to report their earnings truthfully—especially given the significant penalty for failing to do so. Under this assumption, KDoL's reliance on a claimant's initial statement of wages is justified. Thus, KDoL justifiably relied on Debtor's reported wages to initially determine his benefit amount. The fourth element of the § 523(a)(2)(A) test is met.

Finally, in reliance on Debtor's misrepresentation of his wages, KDoL paid Debtor unemployment benefits to which he was not entitled. Debtor does not argue that KDoL would have paid $5,012 to him had he not made the false representation. Thus, the overpayment, which was proximately caused by the false representation, constitutes the damages required by § 523(a)(2)(A).[45]

Because the Court finds that there are no genuine issues of material fact and KDoL has met its burden of proof establishing facts supporting each of the five elements required by § 523(a)(2)(A), KDoL is entitled to judgment as a matter

---

**44.** *See* K.S.A. § 44–702 ("Involuntary unemployment is ... a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and such worker's family.... [Social security] can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor-relief assistance.").

**45.** KDoL's damages are not limited to the overpayment amount; its damages also include statutory interest. Pursuant to K.S.A. § 44–719(d)(2) ("Any benefit erroneously paid which is not repaid shall bear interest at the rate of 1.5% per month."). *See Cohen v. De La Cruz*, 523 U.S. 213, 220–21, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) ("When construed in the context of the statute as a whole, then, § 523(a)(2)(A) is best read to prohibit the discharge of any liability arising from a debtor's fraudulent acquisition of money, property, etc.").

of law. KDoL's motion for summary judgment seeking a determination that its claim (totaling $10,534.72 as of the petition date) is excepted from discharge is, therefore, granted.

## D. Debtor's Objection to Claim

 The Court now addresses Debtor's limited objection to KDoL's proof of claim. Under § 502, a claim is allowed pursuant to a creditor's proof of claim unless "a party in interest" objects. When a party objects to a claim, the creditor carries the ultimate burden of proof as to the validity and amount of the claim.[46] The Court looks to state law when an objection to a claim is predicated on the validity of a security interest.[47]

 The parties agree that KDoL's claim is allowable under § 502, but dispute whether the debt is "secured by a lien" as defined under § 506 (which determines the secured status of an allowed claim). KDoL argues its debt is secured by virtue of a statutory lien, which the Code defines as a "lien arising solely by force of a statute on specified circumstances or conditions."[48] KDoL's claim arose under K.S.A. § 44–719, which affixes liability on "[a]ny person who has received any amount of money as benefits under this act while any conditions for the receipt of

benefits imposed by this act were not fulfilled."[49] Subsection (d) of 44–719 continues: "Unless collection is waived by the secretary, any such amount shall be collectible in the manner provided in K.S.A. 44–717 ... for the collection of past due contributions."[50]

While § 44–717 was initially written to only apply to past due employer contributions, the law changed in 2013 to apply to individuals.[51] Subsection (e)(1) of § 44–717 creates a lien "in favor of the state of Kansas, secretary of labor, upon all property and rights to property, whether real or personal" belonging to any employer or individual subject to the penalties under § 44–717, who has "neglect[ed] or refuse[d] to pay the [amount owed to KDoL] after demand."[52] Similarly, under subsection (e)(2), anyone who is liable to KDoL for overpayments and "neglects or refuses to pay ... within 10 days after notice and demand" may be subject to a "levy upon all property and rights to property."[53] Thus, by the plain language of the statute, a lien and/or levy is created in favor of KDoL when a liable individual refuses to repay a benefit overpayment.

Debtor argues the language in § 44–717(e)(1) and (2) does not apply to individuals, but only to employers who fail to pay

46. *See Agricredit Corp. v. Harrison (In re Harrison)*, 987 F.2d 677, 680 (10th Cir.1993) ("If objection is made to the proof of claim, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim.").

47. *See Butner v. U.S.*, 440 U.S. 48, 56–57, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (holding that federal bankruptcy court "should take whatever steps are necessary to ensure that the [secured creditor] is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued").

48. § 101(53).

49. K.S.A. § 44–719(d)(1). All future references to § 44–717 et seq. are to the Kansas statute.

50. K.S.A. § 44–719(d)(3).

51. *See* Act of Apr. 16, 2013, ch. 106, sec. 11, 2013 Kan. Sess. Laws 106 (eliminating the "of subsection (b)" modifier to "K.S.A. § 44–717," thereby expanding the manner through which KDoL can collect under § 44–719).

52. K.S.A. § 44–717(e)(1).

53. K.S.A. § 44–717(e)(2).

their contributions. This argument wholly ignores the specific intent of the legislature expressed through the 2013 amendment to § 44–717. With the change in the law, the legislature opened the door for KDoL to collect from individuals in all the ways they previously collected from employers—including through statutory liens and levies.

Debtor misrepresented his employment status to KDoL and incurred liability for benefit overpayments under § 44–719. KDoL requested repayment from Debtor at least four times, but Debtor elected to ignore those requests.[54] Since debts incurred under § 44–719 are subject to the collection methods described in § 44–717, Debtor's property is subject to a properly perfected lien and/or levy by KDoL.

Based on the above undisputed facts, the Court finds that KDoL's claim is a statutory lien under the Code[55] and satisfies the requirement for a secured claim under § 506. As § 506 limits the secured value of a creditor's claim to "the value of such creditor's interest in the estate's interest in such property,"[56] and the parties agree that the value of non-exempt property in Debtor's estate is $200,[57] the Court also finds that KDoL's claim is secured only to the extent of $200 and is unsecured for the remainder of its claim.

### III. Conclusion

Given the Court's analysis and for the reasons stated above, $10,534.72 of KDoL's claim (and any accruing interest) will be excepted from discharge under § 523(a)(2)(A) if and when Debtor receives his discharge in this case. Additionally, KDoL's claim is secured only in the sum of $200; the rest of the claim is unsecured.

**IT IS, THEREFORE, ORDERED** that KDoL's motion for summary judgment[58] is granted and Debtor's objection to KDoL's claim[59] is granted in part and denied in part. The claim will be deemed secured to the extent of $200 with the remainder deemed unsecured.

**IT IS SO ORDERED.**

---

**54.** *See* AP 15–7038, Doc. 34, ¶¶ 11.a., 11.b., 11.c., 11.j., exs. 1, 2, 3 (p. 1), and 10.

**55.** *See* § 101(53).

**56.** § 506(a)(1). Section 506(a)(2) sets the value "with respect to personal property securing an allowed claim … based on the replacement value of such property as of the date of the filing of the petition." If the value

of the collateral is less than the secured creditor's claim, the remainder becomes an allowed unsecured claim in favor of the secured creditor. *See* § 506(a)(1).

